[No. A086349. First Dist., Div. Four. Mar. 6, 2001.]

KATHLEEN R. et al., Plaintiffs and Appellants, v.
CITY OF LIVERMORE, Defendant and Appellant.

685

COUNSEL

Michael Millen for Plaintiffs and Appellants.

Thomas R. Curry, City Attorney, Daniel G. Sodergren, Assistant City Attorney, and Gabrielle P. Whelan, Deputy City Attorney, for Defendant and Respondent.

Christopher A. Hansen for American Civil Liberties Union as Amicus Curiae on behalf of Defendant and Respondent.

Ann Brick for American Civil Liberties Union of Northern California and Freedom to Read Foundation as Amici Curiae on behalf of Defendant and Respondent.

Elliot M. Mincberg and Lawrence S. Ottinger for People for the American Way as Amicus Curiae on behalf of Defendant and Respondent.

Bernard C. Barmann, Sr., and Ruth Sorenson for California State Association of Counties as Amicus Curiae on behalf of Defendant and Respondent.

Robert J. Zweben for City of Albany as Amicus Curiae on behalf of Defendant and Respondent.

Heather C. McLaughlin for City of Benicia as Amicus Curiae on behalf of Defendant and Respondent.

Manuela Albuquerque for City of Berkeley as Amicus Curiae on behalf of Defendant and Respondent.

Richard M. Manning City of Capitola as Amicus Curiae on behalf of Defendant and Respondent.

Ronald R. Ball for City of Carlsbad as Amicus Curiae on behalf of Defendant and Respondent.

Michael N. Nordstrom for City of Corcoran as Amicus Curiae on behalf of Defendant and Respondent.

Wall Wall & Peake and Alan J. Peake for City of Delano and City of Wasco as Amici Curiae on behalf of Defendant and Respondent.

Tuttle & McCloskey and Daniel T. McCloskey for Cities of Dinuba, Huron and Orange Cove as Amici Curiae on behalf of Defendant and Respondent.

Scott H. Howard for City of Glendale as Amicus Curiae on behalf of Defendant and Respondent.

Francis R. Ruggieri for City of Gustine as Amicus Curiae on behalf of Defendant and Respondent.

Elaine M. Cass for City of Hollister as Amicus Curiae on behalf of Defendant and Respondent.

Susan Burns Cochran for City of Lathrop as Amicus Curiae on behalf of Defendant and Respondent.

Sharon D. Stuart for City of Lompoc as Amicus Curiae on behalf of Defendant and Respondent.

Orry P. Korb for Town of Los Gatos as Amicus Curiae on behalf of Defendant and Respondent.

Steven F. Nord for City of Merced as Amicus Curiae on behalf of Defendant and Respondent.

Michael D. Milich for City of Modesto as Amicus Curiae on behalf of Defendant and Respondent.

William B. Conners for City of Monterey as Amicus Curiae on behalf of Defendant and Respondent.

Brown Winfield & Canzoneri and Anthony Canzoneri for City of Monterey Park as Amicus Curiae on behalf of Defendant and Respondent.

Robert D. Herrick for City of Moreno Valley as Amicus Curiae on behalf of Defendant and Respondent.

Michael D. Martello for City of Mountain View as Amicus Curiae on behalf of Defendant and Respondent.

Duane E. Bennett for City of Oceanside as Amicus Curiae on behalf of Defendant and Respondent.

Best, Best & Krieger and David J. Erwin for City of Palm Desert as Amicus Curiae on behalf of Defendant and Respondent.

Rutan & Tucker and David J. Aleshire for City of Palm Springs as Amicus Curiae on behalf of Defendant and Respondent.

Scott Nichols for Cities of Pico Rivera and Walnut as Amici Curiae on behalf of Defendant and Respondent.

Debra S. Margolis for City of Pleasant Hill as Amicus Curiae on behalf of Defendant and Respondent.

Michael H. Roush for City of Pleasanton as Amicus Curiae on behalf of Defendant and Respondent.

Daniel J. McHugh for City of Redlands as Amicus Curiae on behalf of Defendant and Respondent.

Owen & Bradley and Robert A. Owen for City of Rialto as Amicus Curiae on behalf of Defendant and Respondent.

Huston T. Carlye, Jr., for City of San Bernardino as Amicus Curiae on behalf of Defendant and Respondent.

Jonathan Lowell for City of San Bruno as Amicus Curiae on behalf of Defendant and Respondent.

Robert G. Boehm for City of San Buenaventura as Amicus Curiae on behalf of Defendant and Respondent.

Leslie E. Devaney for City of San Diego as Amicus Curiae on behalf of Defendant and Respondent.

Louise H. Renne, City Attorney, and Burk E. Delventhal, Deputy City Attorney, for City and County of San Francisco as Amicus Curiae on behalf of Defendant and Respondent.

Jeffrey G. Jorgensen for City of San Luis Obispo as Amicus Curiae on behalf of Defendant and Respondent.

Roy C. Abrams for City of San Mateo as Amicus Curiae on behalf of Defendant and Respondent.

Brian M. Libow for City of San Pablo as Amicus Curiae on behalf of Defendant and Respondent.

Gary T. Ragghianti for City of San Rafael as Amicus Curiae on behalf of Defendant and Respondent.

Michael R. Downey for City of Santa Clara as Amicus Curiae on behalf of Defendant and Respondent.

Atchison & Barisone and John G. Barisone for City of Santa Cruz as Amicus Curiae on behalf of Defendant and Respondent.

Marsha Jones Moutrie for City of Santa Monica as Amicus Curiae on behalf of Defendant and Respondent.

Phillip H. Romney for City of Santa Paula as Amicus Curiae on behalf of Defendant and Respondent.

Valerie J. Armento for City of Sunnyvale as Amicus Curiae on behalf of Defendant and Respondent.

Ann R. Danforth for Town of Tiburon as Amicus Curiae on behalf of Defendant and Respondent.

Debra E. Corbett for City of Tracy as Amicus Curiae on behalf of Defendant and Respondent.

Richards, Watson & Gershon and Kevin G. Ennis for Palos Verdes Library District as Amicus Curiae on behalf of Defendant and Respondent.

Randall A. Hays for Lodi Public Library Board of Trustees as Amicus Curiae on behalf of Defendant and Respondent.

Cooley Godward, Michael Traynor and Matthew D. Brown for the California State Association of Counties, 48 California Cities, The Palos Verdes Library District and the Lodi Public Library Board of Trustees as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

HANLON, J.\*—In this case we hold that a city is not subject to suit for damages or an injunction for offering unrestricted access to the Internet through computers at a public library.

### I. RECORD

This case was filed against respondent City of Livermore by appellant Kathleen R. individually, and in her capacities as a taxpayer and as guardian ad litem for Brandon P., her minor son. The amended complaint includes causes of action for waste of public funds, nuisance, premises liability, and denial of substantive due process (42 U.S.C. § 1983 (hereafter section 1983)). Respondent's demurrer was sustained without leave to amend on the ground that the complaint did not state facts sufficient to constitute a cause of action, and the case was dismissed.

Respondent's library has computers linked to the Internet, which patrons of any age are free to use. Twelve-year-old Brandon went to the computers without appellant's knowledge and downloaded sexually explicit photos from the Internet onto a floppy disk that he brought to the library. Without any adult's knowledge or permission Brandon printed the photos at a relative's computer. He engaged in this activity on about 10 occasions. Appellant alleges that the photos Brandon obtained are harmful to minors and that some of them are obscene. One of the photos is reproduced in color on the first page of the complaint and others are attached as exhibits. In one of the exhibits a middle school schedule is superimposed over the image of a scantily clad woman. Brandon showed the photos to other minors.

A copy of the Internet access policy adopted by respondent's library board of trustees is attached to the complaint. This policy states in part: "The Board of Trustees supports the idea that all members of the community have free and equal access to the entire range of library resources, regardless of content, approach, format or amount of detail. These rights extend to all users of the public library including minors. . . . [¶] . . . [¶] . . . The Internet and its available resources may contain materials of a controversial nature. The Livermore Public Library does not monitor and has no control over the information accessed through the Internet and cannot be held responsible for its content. . . . Library patrons use the Internet at their own risk. . . . [¶] . . . [¶] Individuals must accept responsibility for determining what is appropriate. The Library . . . upholds and affirms the right of each

---

\*Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

individual to have access to constitutionally protected materials and also affirms the right and responsibility of parents to determine and monitor their children's use of library materials and resources. Parents and guardians are encouraged to work closely with their children. Parents are expected to monitor and supervise children's use of the Internet in selecting material that is consistent with personal and family values. The Livermore Public Library does not provide this monitoring or supervision." The policy lists examples of "unacceptable use" of computers, including use "for other than educational, informational and recreational purposes," or for "unauthorized, illegal or unethical purposes."

In her state law claims appellant alleges that: Respondent is wasting public funds on computers that provide access to obscenity and matter harmful to minors; it is a public nuisance for respondent to knowingly allow its computers to be used to access obscenity and matter harmful to minors; and the library is unsafe for minors because the computers provide them with access to harmful matter. The section 1983 claim alleges that: Minors are expected to go to the library to complete public school assignments; the library encourages minors to use its computers; the library has a policy of allowing minors to view and download obscenity and pornography on the computers; minors exposed to obscenity and pornography suffer emotional and psychological damage and damage to their nervous systems; respondent knows its actions and policies are placing minors at grave risk of harm; and respondent tries to keep parents ignorant of that risk.

All of appellant's causes of action seek injunctive relief. The state claims seek to enjoin respondent: from acquiring or maintaining computers which allow people to access obscenity or minors to access harmful sexual matter; from maintaining any premises where minors have that ability; and from expending public funds on such computers. The section 1983 claim is to enjoin respondent from "knowingly and intentionally allowing its computers to display obscene and pornographic images where [Brandon] and other children can view them."[1] The nuisance and premises liability claims also request declarations that respondent is liable for all future damages appellant's children suffer from "sexual and other material harmful to minors" they access at library computers connected to the Internet.

## II. DISCUSSION

A public library is in a "damned if you do, damned if you don't" situation in deciding whether to restrict access to the Internet from its computers to

---

[1] In contrast to these broad claims for injunctive relief, appellant advises in her briefs that she would be satisfied if respondent merely required that minors have "verified written parental permission" to use the Internet.

prevent harm to minors. A case in Virginia shows that the library can be sued if it limits Internet access (*Mainstream Loudoun v. Bd. of Trustees of Loudoun* (E.D.Va. 1998) 24 F.Supp.2d 552 (*Loudoun II*) [use of filtering software violated First Amendment]); this case shows that the library can be sued if it does not. This case, unlike the Virginia one, is untenable. The state law claims in this case are preempted by federal law, and there is no entitlement to relief under section 1983.

A.  *State Law Causes of Action*

█     The state causes of action are precluded by title 47 United States Code section 230 (section 230). Section 230(c)(1) states that: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." This provision prohibits "hold[ing] interactive computer services liable for their failure to edit, withhold or restrict access to offensive material disseminated through their medium." (*Blumenthal v. Drudge* (D.D.C. 1998) 992 F.Supp. 44, 49.) This prohibition was enacted "to promote the continued development of the Internet and other interactive computer services and other interactive media," and "to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." (§ 230(b)(1), (2); see *Blumenthal v. Drudge, supra*, 992 F.Supp. at p. 49.) Thus, "[b]y its plain language, § 230[(c)(1)] creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." (*Zeran v. America Online, Inc.* (4th Cir. 1997) 129 F.3d 327, 330; see also *Ben Ezra, Weinstein, & Co. v. America Online Inc.* (10th Cir. 2000) 206 F.3d 980, 984-985.)

Respondent is entitled to that immunity here. An "interactive computer service" is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by *libraries* or educational institutions." (§ 230(f)(2), italics added.) Respondent provides an "interactive computer service" in this case because its library computers enable multiple users to access the Internet. Respondent is not an "information content provider" in this case because it is not "responsible, in whole or in part, for the creation or development" of any of the harmful matter accessible through its computers. (§ 230(f)(3).)

Appellant contends that section 230(c)(1) immunity does not extend to governmental entities. Nothing in the text or stated purposes of that provision supports this argument. The argument rests on *Mainstream Loudoun v.*

*Board of Trustees of Loudoun* (E.D.Va. 1998) 2 F.Supp.2d 783 (*Loudoun I*). In that case, a public library's board of trustees was alleged to have violated the First Amendment rights of adult patrons by installing filtering software on library computers to block Internet sites which contained matter harmful to minors. The board claimed immunity under section 230(c)(2), a different immunity than the one asserted here. Unlike the immunity here, the immunity claimed in *Loudoun I* conflicted with section 230's stated purposes. Also, appellant's reading of *Loudoun I* is belied by the court's subsequent opinion in *Loudoun II*. For all of these reasons appellant's reliance on *Loudoun I* is misplaced.

The immunity provision at issue in *Loudoun I* reads as follows: "No provider or user of an interactive computer service shall be held liable on account of— [¶] (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected." (§ 230(c)(2).) This immunity has nothing to do with this case, where the claims are that respondent unlawfully *failed* to restrict access to obscene and harmful matter. *Loudoun I* held that this immunity did not extend to the plaintiffs' First Amendment claim because "§ 230 was enacted to minimize state regulation of Internet speech . . . ; § 230 was not enacted to insulate government regulation of Internet speech from judicial review." (*Loudoun I*, *supra*, 2 F.Supp.2d at p. 790.)

This sentence in *Loudoun I*'s discussion of section 230(c)(2)(A) immunity cannot be stretched to deprive governmental entities of immunity under section 230(c)(1). Section 230(c)(1) immunity serves rather than undermines the purpose of minimizing state regulation of Internet speech insofar as it precludes claims based on public entities' failure to undertake that regulation. Thus, the rationale for the denial of immunity in *Loudoun I* has no application in this case.[2] Moreover, the court noted that its holding in *Loudoun I* would have been the same "[e]ven if § 230 were construed to apply to public libraries." (*Loudoun I*, *supra*, 2 F.Supp.2d at p. 790.) Thus, any suggestion in *Loudoun I* that section 230 could never be applied to public libraries would have been dicta. In any event, there can be no doubt that the *Loudoun* court thought that public libraries could claim immunity under section 230(c)(1) because the court ventured in *Loudoun II* that this

---

[2]Entirely apart from the discussion in *Loudoun I*, it is not apparent that a federal statute could ever grant immunity from a federal constitutional claim like the one in *Loudoun*, as opposed to state law claims like those here. (See *Aguilar v. Avis Rent A Car Systems, Inc.* (1999) 21 Cal.4th 121, 150-151 [87 Cal.Rptr.2d 132, 980 P.2d 846] (conc. opn. of Werdegar, J.) ["Congress cannot, by legislation, change the scope of one's First Amendment rights"].)

immunity should alleviate any concern the library might have had with potential criminal liability. (*Loudoun II, supra*, 24 F.Supp.2d at p. 565, fn. 15.) We therefore reject appellant's argument based entirely on *Loudoun I* that defendant has no immunity because it is a governmental entity.

Appellant contends that section 230 cannot be interpreted to confer immunity in this case because her claims are consistent with the aims of Congress in passing that law. Appellant notes that title 47 United States Code section 223 (section 223) was enacted along with section 230 as part of the Communications Decency Act of 1996, and submits that certain of section 223's provisions addressed the same concerns as her lawsuit. Appellant refers to section 223(d)(1)(B), which made it a crime to "use[] any interactive computer service to display in a manner available to a person under 18 years of age, [¶] any comment, request, suggestion, proposal, image, or other communication that, in context, depicts or describes, in terms patently offensive as measured by contemporary community standards, sexual or excretory activities or organs, regardless of whether the user of such service placed the call or initiated the communication," and section 223(d)(2), which made it a crime to "knowingly permit[] any telecommunications facility under [one's] control to be used for [such] activity . . . with the intent that it be used for such activity."

Appellant acknowledges that these criminal laws were struck down on First Amendment grounds in *Reno v. American Civil Liberties Union* (1997) 521 U.S. 844 [117 S.Ct. 2329, 138 L.Ed.2d 874]. However, she argues that these laws show what Congress meant when it stipulated that "[n]othing in [section 230] shall be construed to prevent any State from enforcing any State law that is consistent with this section." (§ 230(e)(3).) Appellant reasons that because section 230(e)(1) likewise directs that "[n]othing in this section shall be construed to impair the enforcement of section 223 . . . or any other Federal criminal statute," and because her lawsuit like section 223 seeks "to prevent the distribution and display of obscene pornography to minors," section 230 cannot properly be interpreted to preclude her state law claims.

The problem with this line of argument is that this is not a criminal case. At most, the statutes appellant cites raise the issue of whether section 230 prevents enforcement of state laws pertaining to criminal conduct, an issue not presented by the allegations of the complaint in this civil case. Appellant attempts to raise this issue in her briefs with charges and hypotheticals involving intentional provision of obscene pornography to minors. Appellant asserts that "it is not the providing of unrestricted Internet access which is the problem; it is the provision of obscene pornography to children." Appellant likens the library's conduct to "set[ting] up a display" of obscene images

and inviting minors to view them. Appellant asks us to imagine an adult enticing minors to view obscene images he had called up on a library computer screen, and suggests that to grant the library immunity here would insulate this adult from criminal prosecution or liability for intentional infliction of emotional distress. Appellant describes this result as "patently absurd and hardly what Congress intended. The man's wrong exists not in creating or distributing the images but in choosing to publicly exhibit them to impressionable youngsters. It is no different with the library which knowingly allows minors to access obscenity on its premises and, when asked, would even facilitate them doing so with one-on-one help."[3] According to appellant's briefs, the library is "giv[ing] operating instructions on how to call up harmful images."

This conduct described in the briefs is not alleged in the amended complaint. When a case has been dismissed for failure to state a cause of action, all properly pled material facts are accepted as true. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) We must thus assume, as the complaint alleges, that respondent purchases and maintains computers which it knows can and have been used by library patrons, including minors, to access and display material which is obscene and harmful to minors. We cannot assume that respondent's librarians exhibit obscenity or other matter harmful to minors, or that they help minors use the library computers to access those materials, because that conduct is not alleged either expressly or by reasonable implication in the complaint. (See *ibid.* [complaint must be given "a reasonable interpretation, reading it as a whole and its parts in their context"].)

Any such implication would be contrary to the library policy attached to the complaint, which among other things prohibits the use of computer resources for illegal purposes. (See Pen. Code, § 313.1, subd. (a) [prohibiting exhibition of harmful matter to minors].) Consistent with the library's stated mission of encouraging children to develop a lifelong interest in learning, the library presumably seeks to impart the "[e]lectronic information research skills" the policy deems "increasingly important to students" and

---

[3]This argument is correct insofar as it implicitly concedes that respondent would not be liable as a publisher *or distributor* of harmful matter simply by providing an interactive computer service. The *Zeran* case holds that section 230(c)(1) immunity extends to distributor, as well as publisher, liability for defamation, and thus that an interactive computer service cannot be held liable merely because it has notice of a potentially defamatory statement on its service. (*Zeran v. America Online, Inc., supra,* 129 F.3d at pp. 331-334.) The *Zeran* court reasoned among other things that "liability upon notice [would] reinforce[] service providers' incentives to restrict speech," and thereby contravene section 230's aim of promoting the continued development of the Internet. (*Zeran,* at p. 333.) This same consideration precludes treating respondent as a distributor of obscenity or other harmful matter merely because it has notice that such matter may be transmitted through its library computers.

others. Librarians cannot be prosecuted for providing such instruction (Pen. Code, § 313.3; *Moore v. Younger* (1976) 54 Cal.App.3d 1122 [127 Cal.Rptr. 171]), and we cannot presume that such instruction would include lessons on finding obscenity or other harmful matter on the Internet. Such lessons would not further the library's stated mission, and would not be consistent with its policy that computers are to be used only for "educational, informational and recreational purposes."

At various points in her arguments appellant suggests that respondent can be held liable for providing obscene pornography to minors, even if librarians themselves do not actually exhibit such matter to minors or teach them how to access it, merely because of the ease with which such images can be obtained from the Internet. In *Reno v. American Civil Liberties Union, supra,* 521 U.S. at page 853 [117 S.Ct. at page 2336], the court recognized that "[s]exually explicit material on the Internet includes text, pictures, and chat and 'extends from the modestly titillating to the hardest-core.' . . . [It] may be accessed either deliberately or unintentionally during the course of an imprecise search." However, the court found that "users seldom encounter such content accidentally. '. . . Almost all sexually explicit images are preceded by warnings as to content.' For that reason, the 'odds are slim' that a user would enter a sexually explicit site by accident." (*Id.* at p. 854 [117 S.Ct. at p. 2336], fn. omitted.) Here, it is not alleged that Brandon stumbled across anything harmful by accident. Nevertheless, appellant has likened library computers to "a machine where you push a red button, [and] obscene pornography appears on the screen." Appellant's briefs represent that "an impressionable child need only type the word 'girl' [into a library computer] and click thrice to view obscene perversions of the darkest order." Appellant has advised that she has experts who can demonstrate "it's so easy to obtain obscene pornography from library terminals in the City of Livermore that's basically the same thing as City librarians simply providing pornography." Thus, appellant argues that respondent has a "policy of *essentially* giving obscene pornography to any willing child who asks." (Italics added.)

Contrary to this line of argument, there is a crucial distinction between providing minors with harmful matter on the one hand, and maintaining computers where minors may obtain such matter, however easily, on the other. Section 230 draws this distinction by immunizing interactive computer service providers from liability for mere failure to "restrict access to offensive material disseminated through their medium." (*Blumenthal v. Drudge, supra,* 992 F.Supp. at p. 49.) Congress was indeed concerned with "children's access to objectionable or inappropriate online material" when it

enacted section 230. (§ 230(b)(4).)[4] To combat that problem and "remove disincentives for the development and utilization of blocking and filtering technologies" (§ 230(b)(4)), Congress conferred section 230(c)(2) immunity for actions to restrict access to objectionable material. However, as the Fourth Circuit observed in the context of a tort claim against a commercial interactive computer service, "Congress made a policy choice . . . not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." (*Zeran v. America Online, Inc., supra,* 129 F.3d at pp. 330-331.) "The purpose of this statutory immunity is not difficult to discern. Congress recognized the threat that tort-based lawsuits pose to freedom of speech in the new and burgeoning Internet medium. The imposition of tort liability on service providers for the communications of others represented, for Congress, simply another form of intrusive government regulation of speech. Section 230 was enacted, in part, to maintain the robust nature of Internet communication and, accordingly, to keep government interference in the medium to a minimum." (*Id.* at p. 330.) Therefore, we conclude that the application of section 230(c)(1) immunity to bar appellant's state law causes of action is fully consistent with the purpose as well as the letter of section 230.

Appellant contends that any immunity in this case would extend only to tort claims, and thus would not cover her taxpayer cause of action. This argument is based on language in the *Zeran* and *Blumenthal* cases referring to section 230(c)(1) immunity from "tort liability." (*Zeran v. America Online, Inc., supra,* 129 F.3d at p. 332; see also *Blumenthal v. Drudge, supra,* 992 F.Supp. at p. 49 ["[w]hether wisely or not, [Congress] made the legislative judgment to effectively immunize providers of interactive computer services from *civil liability in tort* with respect to material disseminated by them but created by others" (italics added)].) Appellant also suggests that this immunity would not apply to her claims for declaratory and injunctive relief. She notes that in *Loudoun I* the court concluded, after discussing *Zeran,* that "[e]ven if § 230 were construed to apply to public libraries, defendants cite no authority to suggest that the 'tort-based' immunity to 'civil liability' described by § 230 would bar the instant action, which is for declaratory and injunctive relief." (*Loudoun I, supra,* 2 F.Supp.2d at p. 790.)

We reject these arguments and hold that respondent is immune from all of appellant's state law claims. *Loudoun I* is distinguishable, again, because it

---

[4]This concern is further reflected in the Children's Internet Protection Act (Pub.L. No. 106-554, tit. XVII, § 1701 et seq. (Dec. 21, 2000) 114 Stat. 2763), which conditions libraries' receipt of certain federal funds and assistance on the use of filtering technology to prevent minors from viewing obscene or other harmful material on computers linked to the Internet. This recently enacted law has no bearing on the immunity at issue in this case.

involved immunity under section 230(c)(2), not section 230(c)(1). Whereas section 230(c)(2) prohibits interactive computer service providers from being "held liable" for specified conduct, and that language may arguably refer only to damage claims, no such limiting language appears in section 230(c)(1). *Zeran* and *Blumenthal* are also distinguishable on this point because, unlike appellant's case, they involved only tort claims. Since there was no occasion to address nontort claims in those cases, their reasoning does not preclude section 230(c)(1) immunity from extending to such claims. (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689] [opinions are not authority for propositions they do not consider].)

Section 230 provides broadly that "[n]o cause of action may be brought *and* no liability may be imposed under any State or local law that is inconsistent with this section." (§ 230(e)(3), italics added.) Thus, even if for purposes of section 230 "liability" means only an award of damages (*Loudoun I, supra,* 2 F.Supp.2d at p. 790), the statute by its terms also precludes other causes of action for other forms of relief. This interpretation is confirmed by the Tenth Circuit's decision in *Ben Ezra, Weinstein, & Co. v. America Online Inc., supra,* 206 F.3d at pages 983-984, which upheld the dismissal under section 230 of state law claims for injunctive relief as well as damages. Taxpayer actions and claims for declaratory and injunctive relief are no less causes of action than tort claims for damages, and thus fall squarely within the section 230(e)(3) prohibition. (E.g., *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 113 [101 Cal.Rptr. 745, 496 P.2d 817] [referring to cause of action for injunctive relief]; *Lawrence Barker, Inc. v. Briggs* (1952) 39 Cal.2d 654, 663 [248 P.2d 897] [referring to cause of action for declaratory relief]; *Fiske v. Gillespie* (1988) 200 Cal.App.3d 1243, 1246 [246 Cal.Rptr. 552] [referring to taxpayer cause of action].) Appellant's taxpayer and equitable theories to prevent respondent from providing open access to the Internet on its library computers contravene section 230's stated purpose of promoting unfettered development of the Internet no less than her damage claims. Therefore, all of appellant's state law claims are preempted under section 230.

B. *Section 1983 Cause of Action*

Appellant's attempt to state a case for violation of her son's right to substantive due process also fails. The government has an interest in protecting minors from harmful materials on the Internet (*Reno v. American Civil Liberties Union, supra,* 521 U.S. at p. 875 [117 S.Ct. at p. 2346]), but it does not have a constitutional duty to do so. Due process is afforded "to protect the people from the State, not to ensure that the State protect[s] them from each other." (*DeShaney v. Winnebago Cty. Soc. Servs. Dept.* (1989) 489

U.S. 189, 196 [109 S.Ct. 998, 1003, 103 L.Ed.2d 249].) Thus, as a general rule "[t]he State's failure to prevent harm inflicted by a private actor does not give rise to a cause of action under section 1983." (*Garcia v. Superior Court* (1990) 50 Cal.3d 728, 739 [268 Cal.Rptr. 779, 789 P.2d 960].) Two exceptions to this general rule have been recognized: the "special relationship" or " 'functional custody' " exception; and the " 'danger creation' " or " 'snake-pit' " exception. (*Liebson v. New Mexico Corrections Dept.* (10th Cir. 1996) 73 F.3d 274, 276; *L.W. v. Grubbs* (9th Cir. 1992) 974 F.2d 119, 121; Blum, *DeShaney: Custody, Creation of Danger, and Culpability* (1994) 27 Loyola L.A. L.Rev. 435, 436-437 (hereafter Blum).) Neither of those exceptions applies here.

The special relationship or functional custody exception applies "when the State takes a person into its custody and holds him there against his will"; in that situation, the state has "a corresponding duty to assume some responsibility for [the person's] safety." (*DeShaney v. Winnebago Cty. Soc. Servs. Dept.*, *supra*, 489 U.S. at pp. 199-200 [109 S.Ct. at p. 1005].) "*DeShaney* left undefined the precise measure of state restraint that engenders an individual's right to claim a corresponding affirmative duty." (*Graham v. Independent School Dist. No. I-89* (10th Cir. 1994) 22 F.3d 991, 994.) However, *DeShaney* set a "high standard" for liability when it indicated that the " ' "deprivation of liberty" ' " which triggers the protections of due process " 'is the State's affirmative act of restraining the individual's freedom *to act on his own behalf.*' " (*Garcia v. Superior Court*, *supra*, 50 Cal.3d at p. 762 (dis. opn. of Mosk, J.); see also *id.* at p. 740 (maj. opn.).) Given this stringent standard, most courts have declined to find that students are in the functional custody of schools despite the compulsory attendance laws. (Blum, *supra*, 27 Loyola L.A. L.Rev. at p. 445; e.g., *Graham v. Independent School Dist. No. I-89*, *supra*, 22 F.3d at p. 994.) Similarly here, even if as appellant alleges minors are expected to go to respondent's library to complete public school assignments, the library does not exercise " 'pervasive control' " over minors (see Blum, *supra*, 27 Loyola L.A. L.Rev. at pp. 449-450 [arguing for an expansive interpretation of *DeShaney*]), much less restrain their freedom to act on their own behalf, by allowing them to freely use the library computers.

Nor could the library's open Internet access policy be considered a state-created danger for purposes of the "snake pit" exception to the rule of nonliability for failure to provide protective services. (*Bowers v. DeVito* (7th Cir. 1982) 686 F.2d 616, 618 [when "the state puts a man in a position of danger from private persons and then fails to protect him, . . . it is as much an active tortfeasor as if it had thrown him into a snake pit"].) For the danger creation exception to apply, it is not enough that the plaintiff's harm might have been foreseeable. (*DeShaney v. Winnebago Cty. Soc. Servs. Dept.*,

*supra*, 489 U.S. at p. 201 [109 S.Ct. at p. 1006] [state was not liable for returning child to custody of abusive father even if it was aware of the danger].) Thus, respondent's alleged awareness that minors are being exposed at library computers to obscenity and harmful matter from the Internet is insufficient to create any liability. It must further appear that the state has " 'affirmatively plac[ed] an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid.' " (*Johnson v. Dallas Independent School Dist.* (5th Cir. 1994) 38 F.3d 198, 201.)[5] For example, in *Wood v. Ostrander* (9th Cir. 1989) 879 F.2d 583, the "classic" danger creation case (*Sutton v. Utah State School for Deaf and Blind* (10th Cir. 1999) 173 F.3d 1226, 1237, fn. 12), a state trooper impounded the plaintiff's car and abandoned her in a high-crime area in the middle of the night.

A library does not "affirmatively plac[e]" minors in danger by allowing them unsupervised use of computers which are linked to the Internet. The situation here is analogous to the one considered in *Carlton v. Cleburne County, Ark.* (8th Cir. 1996) 93 F.3d 505, where a county was sued for violating the substantive due process rights of people who were killed and injured when a bridge maintained by the county collapsed. The plaintiffs argued that the county had placed them in danger by promoting the bridge as a tourist attraction when it knew that the bridge was deteriorating. The court held that "offering a location as a tourist attraction is not the type of affirmative government action that creates a duty to protect under *DeShaney*. [Plaintiffs] allege no affirmative act on the part of government officials directly placing them on the bridge. Nor did the County['s] actions 'create the danger' causing the bridge to collapse. To the contrary, accepting the [plaintiffs'] allegations as true, the bridge cables broke because of internal corrosion caused by rust." (*Id.* at p. 509.) The library's Internet policy likewise did not compel minors to use the library's computers, or create any of the harmful matter accessible through such use. (Cf. *Garcia v. Superior Court, supra*, 50 Cal.3d at p. 738 [rejecting the assumption that "section 1983 simply federalizes all tort claims against state actors"].)

---

[5]There is a split of authority as to whether government policies toward the general public such as the open Internet access policy at respondent's library, as opposed to state action toward specific individuals, can ever create liability under a snake pit theory. (*Huffman v. County of Los Angeles* (9th Cir. 1998) 147 F.3d 1054, 1061, fn. 4.) In *Mark v. Borough of Hatboro* (3d Cir. 1995) 51 F.3d 1137, 1153, the court reasoned that a city could not be held liable under the danger creation exception for failing to adequately screen fire department applicants because danger creation cases involve "discrete, grossly reckless acts committed by the state or state actors using their peculiar positions as state actors, leaving a discrete plaintiff vulnerable to foreseeable injury." We will assume without deciding that the danger creation theory could apply here notwithstanding this authority.

Appellant attempts to avoid the rule that due process does not guarantee protective services by distorting the library's policy and practices. As previously noted, appellant's briefs assert that the library has a policy of providing obscene pornography to minors. Appellant contends that the policy, as so conceived, violates minors' "liberty interest in personal security and freedom from restraint and infliction of pain." (*Wood v. Ostrander, supra,* 879 F.2d at p. 589, citing *Ingraham v. Wright* (1977) 430 U.S. 651, 674-675 [97 S.Ct. 1401, 1414-1415, 51 L.Ed.2d 711] [liberty interests are implicated when a school restrains a child and administers corporal punishment].) Appellant submits that minors are seriously injured by viewing obscene pornography, that freedom from infliction of such pain is a fundamental constitutional right which cannot be infringed without a compelling state interest, and that there is no such interest here because "there is no 'compelling' reason to give children any access to the Internet at all." (See generally *County of Sacramento v. Lewis* (1998) 523 U.S. 833, 846 [118 S.Ct. 1708, 1716-1717, 140 L.Ed.2d 1043] [substantive due process limits what government may do in its legislative as well as executive capacity]; *Washington v. Glucksberg* (1997) 521 U.S. 702, 721 [117 S.Ct. 2258, 2268, 138 L.Ed.2d 772] [laws infringing fundamental rights must be narrowly tailored to serve a compelling state interest].) In the same vein, appellant's briefs assert that respondent's librarians are giving minors obscene pornography, and thus that this case concerns harm inflicted by government employees, rather than their mere failure to provide protection. (See, e.g., *Stoneking v. Bradford Area School Dist.* (3d Cir. 1989) 882 F.2d 720, 724-725 [distinguishing *DeShaney* where injury resulted at the hands of a state employee].)

These arguments are insupportable because it is not the policy of respondent's library to provide minors with obscene pornography. Provision of computer-transmitted obscenity to minors would contravene the library policy's directives that computers be used for educational, informational, recreational, but not illegal, purposes. The policy warns that "controversial" material is available on the Internet, that patrons who use the Internet do so "at their own risk," and that the library does not supervise minors' use of the Internet. This acknowledgement that the library does not undertake to protect minors from harmful matter on the Internet does not imply that the library intends for minors to be exposed to obscenity. The library's affirmation of "the right of each individual to have access to constitutionally protected materials" is not an endorsement of minors' access to obscenity. (See *Ginsberg v. New York* (1968) 390 U.S. 629, 636-637 [88 S.Ct. 1274, 1278-1279, 20 L.Ed.2d 195] [minors have no such constitutional right].)

Since it is not the policy of respondent's library to provide obscene pornography to minors, we are not called upon to decide whether minors

have a fundamental right to freedom from exposure to such material. There is no state policy infringing on any such interest in this instance; there is only a failure to render protection from private sector harm which, under well-settled principles, is not actionable under section 1983. Finally, if as appellant's briefs maintain there are librarians in respondent's employment who are providing obscene pornography to minors, respondent is not liable under section 1983 for their unauthorized actions. (*Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658, 690-691, 694 [98 S.Ct. 2018, 2035-2036, 2037-2038, 56 L.Ed.2d 611] [no respondeat superior liability under section 1983; unlawful action must execute municipal policy]; see, e.g., *J.O. v. Alton Community Unit School Dist.* (7th Cir. 1990) 909 F.2d 267, 272.)

### III. DISPOSITION

The judgment of dismissal is affirmed with costs to respondent.

Reardon, Acting P. J., and Sepulveda, J., concurred.