**Linda MORRISON, M.D., Plaintiff,**

v.

**AMERICAN ONLINE, INC., and John Doe, a/k/a Surfcity45@aol.com, Defendants.**

No. 3:00CV0723AS.

United States District Court,
N.D. Indiana,
South Bend Division.

Aug. 2, 2001.

Linda Morrison, Knox, IN, Pro se.

E. Spencer Walton, Jr., May Oberfell and Lorber, South Bend, IN, Patrick Joseph Carome, Colin Rushing, Samir Jain, Wilmer Cutler and Pickering, Washington, DC, for Defendants.

### MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This matter is before the court on the Defendant's, America Online Inc. ("AOL"), motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure. On March 14, 2001, this court dismissed the claims contained in the Plaintiff's, Dr. Lin-

da Morrison, original complaint.[1] (See 3:00cv0723RM; Docket Entry No. 38). Specifically, this court found that Dr. Morrison failed to state a claim upon which relief could be granted based upon the allegations made in that complaint in light of the statutory immunity provided to interactive computer service providers under the "Computer Decency Privacy Act" 47 U.S.C. § 230(c)(1). However, on March 13, 2001, Dr. Morrison filed her first amended complaint. This complaint mirrors the original complaint with one additional claim for relief. Dr. Morrison now alleges that she was an intended third party beneficiary of the contract entered into between AOL and the John Doe Defendant, Surfcity45@aol.com (hereinafter "Surfcity45"), and that AOL has breached that contract. (See P's First Amend. Compl. at ¶ VII). The court's earlier decision with respect to the original complaint remains final.[2] Therefore, this opinion will address only the additional third party beneficiary claim made in the amended complaint.

## I. BACKGROUND

The key facts that relate to Dr. Morrison's cause of action are not in dispute. During all relevant times, Dr. Morrison lived and practiced in Starke County, Indiana. AOL, a Delaware corporation with its principal place of business in Virginia, is involved in providing internet access to vast numbers of individuals and businesses throughout the United States. Surfcity45 is one of the numerous subscribers to AOL's internet service. (P's First Amend. Compl. at ¶ 3).

Dr. Morrison alleges that on various dates in July of 2000, Surfcity45 sent false and defamatory statements via email to a Dr. Geoffrey Klein in Webster, Texas. (P's First Amend. Compl. at ¶ 4–5). Furthermore, Dr. Morrison alleges that on July 18, 2000, Surfcity45 contacted a Ealgail@aol.com and made threats against Dr. Morrison's license to practice and asked that Ealgail@aol.com make similar threats to her. (P's First Amend. Compl. at ¶ 6). Finally, Dr. Morrison alleges that in October of 2000, Surfcity45 made additional false and defamatory statements to multiple parties via email. (P's First Amend. Compl. at ¶ 9). Dr. Morrison contends that these false and defamatory statements made by Surfycity45 have resulted in damage and injury to her professional reputation as a physician. (*Id.*). In an attempt to halt the alleged defamatory statements, Dr. Morrison contacted AOL directly to notify the internet provider of the problems concerning their customer, Surfcity45. (P's First Amend. Compl. at ¶ 7). Dr. Morrison alleges that AOL failed to take action after being notified of the alleged defamatory statements being made by one of its customers, specifically Surfcity45. (P's First Amend. Compl. at ¶ 7–8).

AOL, in providing its internet services and products, has established a detailed and comprehensive Membership Agreement to govern its relationship with its numerous customers. The conduct of its various customers in utilizing the internet service is governed under AOL's Community Guidelines. (Member Agreement § 3). Under the Membership Agreement,

---

1. Dr. Morrison's original complaint stated four separate claims for relief: 1) Defamation of Character; 2) Libel; 3) Slander and 4) Tortuous Interference with an Advantageous Business Relationship.

2. This case was originally assigned to Judge Miller, however, he later *sua sponte* recused himself pursuant to 28 U.S.C. § 455(a). *See United States v. Widgery*, 778 F.2d 325, 328 (7th Cir.1985).(Where a judge is recused based only upon the appearance of impropriety, the recusal does not vitiate acts taken before the recusal.)

AOL expressly states that it is not responsible for the content supplied by the customers. (*Id.*). Rather it is the customers duty to adhere to the Community Guidelines adopted by AOL. AOL has the sole discretion to enforce the guidelines and may terminate the customer's account for failure to adhere to those guidelines. More importantly to our discussion here, the Member Agreement expressly states the following:

> The Member Agreement represents your entire agreement with AOL. You agree that this Member Agreement is not intended to confer and *does not confer any rights or remedies upon any person other than the parties to this Agreement.* You also understand and agree that the AOL Community Guidelines and the AOL Privacy Policy, including the AOL's enforcement of those polices, are *not intended to confer, and do not confer, any rights or remedies upon any person.* (Member Agreement § 8 (emphasis added).).

With these factual considerations in mind, the court now turns to the applicable law with respect to Dr. Morrison's claim against AOL for its alleged breach of the Membership Agreement.

## II. STANDARD OF REVIEW

■ The applicable standard of review in assessing Dr. Morrison's claim requires the court to determine whether an actual legal claim exists based upon the alleged facts in the complaint. See FED. R. CIV. P. 12(b)(6). The complaint must allege facts that sufficiently set forth the essential elements of a cause of action. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992), *cert denied*, 506 U.S. 893, 113 S.Ct. 267, 121 L.Ed.2d 196 (1992). Further, the claim will only be dismissed if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court may consider all allegations made in the complaint as well as any attachments accompanying the complaint. See FED. R. CIV. P. 10(c). If the pleader does not attach certain written instruments referenced in the complaint, the opponent may do so. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.* 987 F.2d 429, 431 (7th Cir.1993). Such exhibits are made a part of the pleadings for all purposes. *International Mktg., Ltd. v. Archer–Daniels–Midland Co.*, 192 F.3d 724, 729 (7th Cir.1999).

## III. DISCUSSION

The court begins with a few words concerning the history of the Internet as well as its positive impact upon our society as a whole. The Internet was first designed by the military in an effort to facilitate its communication and command capabilities during the cold war era. See (http://www.pbs.org/internet/timeline/timeline-txt.html). It goes without saying that those early pioneers had no idea that this invention would be transformed into an Information Superhighway. (*Id.*) As of 1996, users in more than 150 countries around the world have utilized the internet in some fashion or another, i.e. communicating with others via email, shopping, educational research, etc. (*Id.*) Many authorities have compared the invention of the internet to the 15th Century's printing press. Robert J. Samuelson, *Gutenberg Vs. the Net*, The Washington Post, January 19, 2000, Op–Ed. However, with any new tool created to enhance communication the potential for abuse or malfeasance arises.

In 1996, Congress enacted the "Computer Decency Privacy Act" 47 U.S.C. § 230 and specifically granted immunity to interactive computer services providers in response to various state law claims brought against those providers. In passing this piece of legislation, Congress found that

the Internet has brought about new and exciting ways in which the transfer of information between individuals is achieved.[3] Specifically, Congress felt that it was important to promote the advances made in the transfer of information via this medium and to prevent any entanglement that certain lawsuits imposed on providers of this service may cause.

Section 230(c)(1) provides that "no provider or user of an interactive computer services shall be treated as the publisher or speaker of any information provided by another information content provider."[4] The purpose of this section was to prevent interactive computer services providers, such as AOL, from liability based upon its act of transferring possible defamatory messages created by one of their subscribers via the Internet. See *Zeran v. America Online, Inc.*, 129 F.3d 327, 332 (4th Cir.1997); *Ben Ezra, Weinstein & Co. v. America Online, Inc.*, 206 F.3d 980, 984–85 (10th Cir.2000). (§ 230(c)(1) creates immunity from liability for computer service providers in which information originated with a third party.). In *Ben Ezra*, the plaintiff filed suit against AOL alleging defamation and negligence as a result of certain content posted via AOL's interactive computer service. 206 F.3d at 983. The dispute focused on whether AOL had engaged in the "creation or development" with respect to certain content on its interactive computer service and whether immunity attached pursuant to § 230(c)(1). *Id.* The Tenth Circuit held that AOL acted solely as a content provider and therefore was immune from liability. *Id.* The court of appeals rejected the plaintiff's argument that because AOL had the ability to edit certain material provided by third parties that fact transferred AOL's status from merely a service provider to a content provider. *Id.* at 985–86.

Furthermore, it should be noted that the legislative history surrounding Section 230 demonstrates that Congress intended to promote and encourage self-regulation of interactive computer services. Section 230(c)(2) provides that "no provider ... of an interactive computer service shall be held liable on account of ... any action voluntarily taken in good faith to restrict access to or availability of" objectionable or harassing content. See 47 U.S.C. § 230(c)(2)(A). Congress in enacting such a provision wanted the industry to take proactive measures in self-regulating the content supplied by its customers/provid-

---

**3.** In 47 U.S.C. § 230(a) Congress made the following findings with respect to the development of the internet: (1) The rapidly developing array of Internet and other interactive computer services available to individual Americans represent an extraordinary advance in the availability of educational and informational resources to our citizens. (2) These services offer users a great degree of control over the information that they receive, as well as the potential for even greater control in the future as technology develops. (3) The Internet and other interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity. (4) The Internet and other interactive computer services have flourished, to the benefit of all Americans, with a minimum of government regulation.(5) In-

creasingly Americans are relying on interactive media for a variety of political, educational, cultural, and entertainment services.

**4.** (2) The term "interactive computer service" means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions.

(3) The term "information content provider" means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service. 47 U.S.C. § 230(f)(2–3)

ers. Furthermore, it did not intend for various parties to bring a cause of action against such service providers because of voluntarily actions taken by AOL based upon the content transferred via its medium. See 47 U.S.C. § 230(c)(2). The wisdom of Congress in providing such immunity is well taken considering the myriad of constitutional and other legal issues that could be raised by various parties without giving such interactive computer service providers the ability to regulate without fear of legal action.

## A. THIRD PARTY BENEFICIARY CLAIM

As stated previously, Dr. Morrison's amended complaint adds only one additional claim to her original complaint. Specifically, she contends that she is a third party beneficiary to the agreement entered into between Surfcity45 and AOL. In order to be a third party beneficiary, Dr. Morrison must show that (1) the intent to benefit her is clear; (2) the contract imposes a duty on one of the contracting parties in favor of Dr. Morrison; and (3) the performance of the terms necessarily renders to the third party a direct benefit intended by the parties to the contract. *Zurich–American Ins. Group v. Wynkoop,* 746 N.E.2d 985, 990 (Ind.App.2001); *Emmons v. Brown,* 600 N.E.2d 133, 134 (Ind.Ct.App. 1992). In *Does v. Franco Productions,* No. 99 C 7885, 2000 WL 816779 (N.D.Ill. June 22, 2000), the plaintiffs invoked a third-party beneficiary claim based upon the agreements that were entered into between the content providers and the computer service providers, GTE and PSINet. Those agreements provided, *inter alia,* that the content providers/subscribers would not violate any federal or state law, or infringe upon the rights of others. The district court found that the agreements contained no express language in the contract identifying rights belonging to a third-party beneficiary either expressly or

impliedly. *Id.* at *5. The court went on to dismiss the third-party beneficiary claim pursuant to Rule 12(b)(6). *Id.*

■ The facts alleged by Dr. Morrison are even further afield than the facts in *Does v. Franco Productions.* Here under the applicable principles of Indiana law regarding third-party beneficiaries it is clear that Dr. Morrison does not meet that definition. First, Dr. Morrison does not allege that she is a party to the agreement entered into between AOL and Surfcity45. Second, one has to look no further than the express language of the Membership Agreement to ascertain that she is not an intended beneficiary of that agreement. "You agree that this Member Agreement is not intended to confer and does not confer any rights or remedies upon any person other than the parties to this Agreement." (Membership Agreement § 8). Therefore by the express terms of that agreement, her third party beneficiary claim fails as a matter of law.

## B. INJUNCTIVE RELIEF UNDER 47 U.S.C § 230

■ Finally, the court will briefly address Dr. Morrison's argument that the statutory immunity granted by Section 230 should not apply in light of the fact that she is seeking injunctive relief. A review of the various cases addressing whether the statutory immunity of Section 230 applies to injunctive relief reveals a disagreement among various courts. See *Ben Ezra,* 1999 WL 727402, at *2 (D.N.M. Mar. 1, 1999), aff'd, 206 F.3d 980, 983–86 (10th Cir.2000), *cert. denied,* 531 U.S. 824, 121 S.Ct. 69, 148 L.Ed.2d 33 (2000); (the Plaintiff seeks injunctive relief from the Defendants continued publication of inaccurate stock information. AOL is again entitled to Section 230 immunity and this claim will be dismissed as well.); *Kathleen R. v. City of Livermore,* 87 Cal.App.4th 684, 698, 104 Cal.Rptr.2d 772 (2001) (ac-

tions and claims for declaratory and injunctive relief are no less causes of action than tort claims for damages, and thus fall squarely within the section 230(e)(3) prohibition.); *Compare Does v. Franco Productions,* No. 99 C 7885, 2000 WL 816779 (N.D.Ill. June 22, 2000)(Plaintiffs' claims for injunctive relief, although not precluded by the CDA, fail to state a claim); *Mainstream Loudoun v. Board of Trustees,* 24 F.Supp.2d 552, 561 (E.D.Va.1998) (finding that § 230 provides immunity from actions for damages; it does not, however, immunize defendant from an action for declaratory and injunctive relief.). However, an educational exercise on this point is not warranted for the reasons that follow and therefore the court expresses no opinion as to whether or not Dr. Morrison's claim for injunctive relief is barred under Section 230.

█ When liability among defendants is several, a plaintiff cannot aggregate its claims against individual defendants in order to satisfy the jurisdictional amount in controversy requirement of 28 U.S.C. § 1332. Dr. Morrison must satisfy the jurisdictional amount with respect to each defendant. See *American Standard Ins. Co. of Wisconsin v. Rogers,* 123 F.Supp.2d 461, 464 (S.D.Ind.2000), *Reason v. General Motors Corp.,* 896 F.Supp. 829, 832 (S.D.Ind.1995) *Sovereign Camp W O W v. O'Neill,* 266 U.S. 292, 295–96, 45 S.Ct. 49, 50, 69 L.Ed. 293 (1924); *Citizens' Bank v. Cannon,* 164 U.S. 319, 322, 17 S.Ct. 89, 90, 41 L.Ed. 451 (1896); *Walter v. Northeastern Railroad Co.,* 147 U.S. 370, 373–74, 13 S.Ct. 348, 349–50, 37 L.Ed. 206 (1893); *Jewell v. Grain Dealers Mut. Ins. Co.,* 290 F.2d 11, 13 (5th Cir.1961). Here as explained in the court's previous opinion, as well as this opinion, Dr. Morrison's claim for monetary or compensatory damages can only be brought against the content provider, Surfcity45. Further, any damage claim against Surfcity45 cannot be aggregated with the amount in controversy

needed to enforce an equitable remedy against AOL. The costs for imposing an injunction against AOL as requested in her claim for relief comes no where close to the $75,000 jurisdictional amount required under 28 U.S.C. § 1332. See (P's First Amend. Compl. at ¶ VII. at no. 10); *In re Brand Name Prescription Drugs,* 123 F.3d 599, 610 (7th Cir.1997)(In determining whether amount in controversy necessary for diversity jurisdiction in which injunctive relief is sought, test is cost to the defendant of injunction running in favor of plaintiff.) Therefore, any claim for injunctive relief lacks the appropriate amount in controversy to invoke this court's subject matter jurisdiction. The court is not unsympathetic to Dr. Morrison's plight. However, the appropriate amount in controversy under § 1332 is simply not met in order to invoke this court's jurisdiction based upon injunctive relief alone.

## IV. CONCLUSION

For the foregoing reasons the Defendant's motion to dismiss is **GRANTED.** Each party to bear its own costs. **IT IS SO ORDERED.**