[No. B221010. Second Dist., Div. One. Nov. 8, 2010.]

GLEN HILL FARM, LLC, Plaintiff and Respondent, v. CALIFORNIA HORSE RACING BOARD et al., Defendants and Appellants.

## COUNSEL

Edmund G. Brown, Jr., Attorney General, Alicia M. B. Fowler, Assistant Attorney General, Michael E. Whitaker and Judith R. Seligman, Deputy Attorneys General, for Defendants and Appellants.

Iverson, Yoakum, Papiano & Hatch and Neil Papiano for Plaintiff and Respondent.

## OPINION

**ROTHSCHILD, P. J.**—The underlying dispute involves whether Medici Code, the horse who won the 2007 Del Mar Derby, should be disqualified because he cheated to meet the conditions for entry into the race. The trial court granted the petition for a writ of mandate brought by Glen Hill Farm, LLC, owner of the second-place horse, and ordered the California Horse Racing Board (Board) "to exercise its discretion as to whether or not the purse for the Del Mar Derby . . . should be redistributed and, if so, to whom such redistribution should be made."[1] We reverse.

## FACTS AND PROCEEDINGS BELOW

In order to qualify for the 2007 Del Mar Derby a horse had to be three years old, have won, placed or showed in graded or group stakes races during the meet and accumulated a certain amount of earnings.

Medici Code finished second in the Oceanside Stakes at Del Mar on July 18, 2007. In a postrace blood and urine test, however, he tested positive for a substance, Clenbuterol, in excess of the authorized level. The laboratory notified the Board of this test result on July 30, 2007. The Board notified Medici Code's owners and trainer of this test result sometime between July 30, 2007, and August 9, 2007, the day the trainer exercised the right to a second test by an independent laboratory. Under the Board's regulations these test results were confidential and released only to Medici Code's owners and trainer.

Before the results of the second test from the July 18 race were reported to the Board, Medici Code entered and won the La Jolla Handicap on August 11, 2007. But, again, he tested positive for an excess amount of Clenbuterol. The Board was notified of this test result on August 23, 2007, and the horse's owners and trainer were notified sometime between August 23, 2007, and September 4, 2007. The rule of confidentiality applied to these test results as well.

Meanwhile, based on his second place finish in the Oceanside Stakes, his first place finish in the La Jolla Handicap and his overall earnings, Medici

---

[1] The Board's ruling would not affect the payoffs of winning bets to members of the public. (Bus. & Prof. Code, § 19517, subd. (b).)

Code qualified for the Del Mar Derby on September 2, 2007, which he won. This time he tested negative for any regulated substances. He collected a purse of $240,000. The second place horse, owned by petitioner Glen Hill, collected $80,000.

On September 4, 2007, two days after the running of the Del Mar Derby, Medici Code's owners and trainer requested a second test of the blood and urine sample from the August 11 La Jolla Handicap.

On September 19, 2007, the laboratory conducting the second tests on the samples from the July 18 Oceanside Stakes and the August 11 La Jolla Handicap notified the Board of its findings. The findings confirmed the presence of illegal amounts of Clenbuterol in both races.

On September 21, 2007, the Board filed complaints against the owners and trainer of Medici Code for violation of the Board's drug policy. Filing the complaints removed the shield of confidentiality from the drug tests.

On October 16, 2007, counsel for Glen Hill wrote to the Board requesting a hearing on whether Medici Code should be disqualified from the Del Mar Derby and his purse redistributed on the ground that without his results in the Oceanside Stakes and La Jolla Handicap Medici Code would not have been eligible to run in the Derby.

On October 26, 2007, the Del Mar Board of Stewards (Stewards)[2] disqualified Medici Code from the Oceanside Stakes and the La Jolla Handicap and redistributed his earnings to the other horses in the races. The Stewards took no action regarding Medici Code's victory in the Derby. A few days later the Board's executive director informed Glen Hill of the Stewards's decision.

In a November 2007 letter to the Board, Glen Hill renewed its demand that Medici Code be declared ineligible for the Derby and his winnings redistributed to the other horses in the race. Alternatively, Glen Hill requested that the Board initiate a "Statement of Issues" proceeding under Government Code section 11504 to determine Medici Code's eligibility for the race and

---

[2] The Stewards are race track officials to whom authority is delegated by the Board to oversee the conduct of race meetings. (Bus. & Prof. Code, § 19440, subd. (b).) As we discuss below, the Stewards among other things act as the adjudicative arm of the Board with respect to controversies that arise during the meet.

entitlement to the first place purse[3] or in the alternative to conduct a hearing under its authority to adjudicate controversies "arising from the enforcement of those laws and regulations dealing with horse racing." (Bus. & Prof. Code, § 19440, subd. (a)(3).)

On the Board's behalf, the Attorney General responded to Glen Hill's letter contending that (1) a Statement of Issues was not appropriate in this matter because the Board had not denied any "right, authority, license or privilege" to Glen Hill, (2) if Glen Hill objected to the way the Derby was run it should complain to the Del Mar Racing Association, and (3) the Board's adjudicatory power does not extend to ordering Medici Code disqualified from the Derby since he did not test positive for any prohibited substances following that race.

Glen Hill never filed a protest to the Stewards over their decision to declare Medici Code the winner of the Derby.

In November 2008, Glen Hill filed a petition for a writ of administrative mandate under Code of Civil Procedure section 1094.5 and traditional mandate under Code of Civil Procedure section 1085 seeking to compel the Board to disqualify Medici Code from the Derby and redistribute his earnings or to convene a hearing to determine the rights to the Derby purse. The Board filed a verified answer and the matter was heard on the declarations and points and authorities of the parties.

The trial court initially ruled in favor of the Board. It denied a writ under Code of Civil Procedure section 1094.5 because that statute only applies to the review of administrative hearings and the Board did not hold a hearing in this case. The court also denied a writ under Code of Civil Procedure section 1085 to compel the Board to hold a hearing. The court found that the Statement of Issues procedure under Government Code section 11504 does not apply because this controversy does not involve the issuance or renewal of a right, authority, license, or privilege. Furthermore, it found that the Board does not have jurisdiction to disqualify a horse except on appeal from a decision by the stewards and Glen Hill did not file a protest with the Stewards. The court entered judgment denying the writ on May 8, 2009.

Later, the court changed its mind. In response to a motion for reconsideration, which the court deemed a timely motion to vacate the judgment, the

---

[3] A Statement of Issues initiates a hearing by an administrative or regulatory agency "to determine whether a right, authority, license, or privilege should be granted, issued, or renewed." (Gov. Code, § 11504.)

court ruled that under Business and Professions Code section 19517, subdivision (b) the Board has discretion to decide an issue pertaining to the distribution of purses when requested to do so by an owner or trainer. Accordingly, the court entered judgment commanding the Board to exercise its discretion as to whether or not the Derby purse should be redistributed and, if so, to whom. The court did not specify how the Board should exercise its discretion or the means by which it should reach its determination.

The Board filed a timely appeal.

## DISCUSSION

### I. *The Order Vacating the Initial Judgment*

█ Code of Civil Procedure section 663 permits the court to vacate its judgment if it determines the judgment is "[i]ncorrect or erroneous" as a matter of law or inconsistent with or unsupported by the facts. In ruling on a motion to vacate the judgment the court cannot " 'in any way change any finding of fact.' " (*Jones v. Clover* (1937) 24 Cal.App.2d 210, 212 [74 P.2d 517].)

The Board maintains the court improperly vacated its initial decision in the Board's favor because it ignored the following "immutable" factual findings: (1) Glen Hill failed to exhaust its administrative remedies because it did not follow the Board's regulations; (2) Glen Hill did not file a protest with the Stewards; (3) Glen Hill's failure to exhaust its administrative remedies deprived the court of jurisdiction under Code of Civil Procedure section 1094.5; (4) the Board did not have a ministerial duty to decide Glen Hill's complaint because Glen Hill did not first seek a decision by the Stewards.

The Board's argument lacks merit. Only item (2)—Glen Hill did not file a protest with the Stewards—is a finding of fact and in vacating the judgment the court decided that fact was irrelevant because a protest to the Stewards was not a prerequisite to a hearing by the Board under Business and Professions Code section 19517, subdivision (b). The other three items were conclusions of law which the court had the power to change. Therefore, the court acted within its discretion in vacating its initial judgment under Code of Civil Procedure section 663.

### II. *The Board's Duty to Conduct a Hearing on Glen Hill's Complaint Against Medici Code*

The essence of Glen Hill's grievance is that Medici Code should be disqualified from the Derby and the purse redistributed because his owners

and trainer cheated in the pre-Derby qualifying races by injecting him with a regulated substance, Clenbuterol. Glen Hill reasons that had it not been for Medici Code's success in those races, from which he was disqualified *after* the Derby, he would not have been eligible to run in the Derby and Glen Hill's horse, Augment, who placed, would have been the winner and collected the $240,000 first prize.

Glen Hill contends its complaint to the Board was sufficient to entitle it to a hearing for two reasons. It was impossible for it to file a protest with the Stewards within 72 hours of the Derby, as required by the Board's regulations, because the grounds for disqualifying Medici Code from the race did not become public until 19 days later when the Board filed complaints against his trainer for violating the antidrug rules in the Oceanside Stakes and the La Jolla Handicap. Alternatively, Glen Hill maintains that it was not required to first protest to the Stewards because under Business and Professions Code section 19517, subdivision (b) only the Board has jurisdiction to order a change in the distribution of a purse.

As we explain below, the "72-hour" rule did not bar Glen Hill's protest to the Stewards and exhaustion of that remedy is a prerequisite to an appeal to the Board even in cases involving a change in the distribution of a purse.

### A. *The Hearing Procedure for Protests*

The rules for handling complaints protesting the right of a horse to a place, a purse or an award in a race are contained in title 4 of the California Code of Regulations.[4]

"A jockey, driver, trainer or owner of a horse which is entered for or is a starter in a race is empowered to file an objection or protest against any other horse in such race upon the grounds set forth in this article for objections and protests." (Rule 1756.)

A " '[p]rotest' " is defined as "a formal complaint filed after a race with the stewards or the Board protesting the right of any horse to a place, purse or award in the race, or protesting any decision of the stewards relating to the eligibility, participation or placing of any horse in a race." (Rule 1420, subd. (r).)[5]

---

[4] The Board rules are set forth as sections in the California Code of Regulations, title 4, but we will refer to them as Rules.

[5] Although Rule 1420, subdivision (r), defining protests, refers to protests filed with "the Board," these protests are limited to incidents occurring within the last two days of the race meeting. (Rule 1754.)

The grounds for a protest include: "the horse is not qualified to enter under the conditions specified for the race" and "[a]n unfair advantage was gained in violation of the rules." (Rules 1752, subd. (c), 1755, subd. (e); see rule 1755, subd. (a).)

A protest against any horse that has started a race "shall be made to the stewards in writing, signed by the protestor, no later than seventy-two (72) hours after the race is declared official excluding non-racing days of the meeting." (Rule 1754.) An appeal to the Board may be made from "every decision of the stewards" except a decision regarding a foul or riding or driving infraction. (Rule 1761, subd. (a).) "If a protest against a horse which has won or which has placed in any race is declared valid, that horse may be disqualified and the other horses in the race are entitled to places in the order in which they finished." (Rule 1759.)

It is undisputed that the Derby was declared official the day of its running, September 2, 2007. Thus, under the "72-hour" rule of Rule 1754, Glen Hill had until the afternoon of September 5 to file its protest of the race.

Glen Hill maintains that it was impossible for it to comply with the "72-hour" rule because the findings of a positive drug test are kept confidential between the Board and the horse's owner and trainer unless the Board files a complaint against the owner or trainer. (Rule 1859.25, subds. (a), (f).) In this case, the Board did not file its complaints against Medici Code's trainer until 19 days after the running of the Derby. Therefore, Glen Hill argues, it did not know, and was prevented from finding out, that it had grounds to protest Medici Code's victory in the Derby until well after the 72 hours had passed.

 This argument fails because compliance with the "72-hour" rule is not the only means for filing a protest with the Stewards. Rule 1757 states "the time limitation on the filing of protests shall not apply in any case in which fraud or willful misconduct is alleged provided that the stewards are satisfied that the allegations are bonafide [*sic*] and susceptible of verification." Based on the Stewards's disqualification of Medici Code from the Oceanside Stakes and the La Jolla Handicap because of the presence of a regulated substance, Glen Hill could have filed bona fide and verifiable allegations of fraud or willful misconduct on the part of the horse's owners and trainer.

Glen Hill argues that it could not have filed a protest with the Stewards of the Del Mar meeting because their jurisdiction over matters occurring at the

meet expired on October 5 and the Stewards did not make their final decisions forfeiting Medici Code's finishes in the Oceanside Stakes and the La Jolla Handicap until October 26.

Glenn Hill did not claim, let alone present evidence, that it was unaware of the Board's publicly announced complaint against Medici Code within time to file a protest directly with the Stewards. And its claim that it could not file a protest until the Stewards's decision became final is belied by its own conduct on October 16, 10 days before that decision, when its attorney wrote to the Board protesting Medici Code's qualification. In any case, even assuming that Glen Hill could wait until the Stewards's final decision, it could have protested to any stewards in session, which it also failed to do.

■ Because Glen Hill could have filed its protest with the Stewards under Rule 1757 discussed above, but failed to do so, the Board had no regulatory duty to grant it a hearing.

### B. *Protests Pertaining to the Distribution of Purses*

The trial court concluded that a protest need not first have been presented to the Stewards in cases such as this which involve a change in the distribution of a purse. The court relied on a sentence in Business and Professions Code section 19517, subdivision (b) which states: "[A]ny decision pertaining to the distribution of purses may be changed only if a claim is made in writing to the board by one of the involved owners or trainers, and a preponderance of the evidence clearly indicates to the board that one or more of the grounds for protest, as outlined in the regulations adopted by the board, has been substantiated." We disagree with the court's interpretation of the statute for three reasons. It is not supported by the plain language of the statute or the Board's regulations and it creates an exception that would swallow the rule that protests must first be presented to the stewards.

In reaching its conclusion, the court took the language of Business and Professions Code section 19517, subdivision (b) out of context.

Subdivision (a) of Business and Professions Code section 19517 states in relevant part: "The board, upon due consideration, may overrule any *steward's* decision . . . if a preponderance of the evidence indicates any of the following: [¶] (1) The steward mistakenly interpreted the law. [¶] (2) New evidence of a convincing nature is produced. [¶] (3) The best interests of racing and the state may be better served." (Italics added.)

■ Subdivision (b) of Business and Professions Code section 19517 contains two exceptions to the Board's power under subdivision (a). The

Board may not overrule "any decision pertaining to the finish of a race, as used for purposes of parimutuel fund distribution to winning ticketholders." (*Id.*, subd. (b).) The second exception contains the language relied on by the trial court. It states: "Furthermore, any decision pertaining to the distribution of purses may be changed only if a claim is made in writing to the board by one of the involved owners or trainers, and a preponderance of the evidence clearly indicates to the board that one or more of the grounds for protest, as outlined in regulations adopted by the board, has been substantiated." (*Ibid.*) Thus, in subdivision (b) of the statute, the Legislature limited the grounds on which the Board could change the stewards's decision "pertaining to the distribution of purses"; it did not eliminate the requirement that protests go first to the stewards in such cases. This conclusion is supported by the next sentence of subdivision (b) which states: "The chairperson of the board may issue a stay of execution pending appeal from a *steward's* decision if the facts justify the action." (Italics added.)

■ Construing the word decision "in the context of the statute as a whole and the entire scheme of law of which it is a part" (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 363 [112 Cal.Rptr.3d 455]), we conclude that subdivision (b) of Business and Professions Code section 19517 relates to appeals from decisions of stewards.

■ This is the construction the Board has given the statute. Rule 1420, subdivision (r) defines a protest as a formal complaint with the stewards "protesting the right of any horse to a place, *purse* or award in the race." (Italics added.) (See, *ante*, fn. 5.) We give deference to the contemporaneous interpretation of a statute by an administrative agency charged with its administration. (*Prospect Medical Group Inc. v. Northridge Emergency Medical Group* (2009) 45 Cal.4th 497, 510 [87 Cal.Rptr.3d 299, 198 P.3d 86].)

Finally, if there was a "purse" exception to the rule that protests be first addressed to the stewards the exception would swallow the rule. Virtually every decision on a protest is a "decision pertaining to the distribution of purses" otherwise there would be little point to the protest.[6]

---

[6] The grounds for a protest are set forth in the Board's regulations. They are: "(a) Any ground for objection as set forth in [Rule 1752 including an objection under Rule 1752, subdivision (c) that a horse does not meet the qualifications for the race]. [¶] (b) The official order of finish, as determined by the stewards, was incorrectly posted. [¶] (c) A jockey, driver, trainer or owner of a horse which started in the race was ineligible to participate in racing as provided in this Division. [¶] (d) The weight carried by a horse was improper, by reason of fraud or willful misconduct. [¶] (e) An unfair advantage was gained in violation of the rules." (Rule 1755.)

## DISPOSITION

The judgment granting the petition for a writ of mandate is reversed and the cause is remanded to the trial court with directions to enter a new and different order denying the petition in all respects. Appellants are awarded their costs on appeal.

Chaney, J., and Johnson, J., concurred.

A petition for a rehearing was denied December 1, 2010, and respondent's petition for review by the Supreme Court was denied February 2, 2011, S189044. Werdegar, J., did not participate therein.