CORTIÑAS, J.
John Giordano (“Giordano”) operates G & G Addiction Treatment, Inc. (“G & G”), a Florida corporation which offers addiction treatment services. In July 2009, a disgruntled recipient of G & G’s services went online and posted false and defamatory claims about G & G, identifying Giorda-no as a convicted felon and claiming, among other things, that the employees of G & G illegally disburse medications and that the facility itself is dangerous. These posts were made on a website operated by Appellee, Xcentric Ventures, LLC (“Xcen-tric”), located at http://www.ripoffreport. com. The purpose of the website is to allow third party users to post complaints about companies or individuals, as happened here. Xcentric does nothing to prevent users of its website from posting false and defamatory statements, as also happened here.
In September 2009, Giordano and G & G (collectively, the “Appellants”) filed a complaint asserting four defamation-based claims against the user, and one claim seeking injunctive relief against Xcentric, requesting that the court prohibit Xcentric from allowing the post to remain on its website. The trial court determined that at least a portion of the post was defamatory per se. However, Xcentric moved to dismiss the complaint against it on the basis of its immunity from suit under the Communications Decency Act, 47 U.S.C. § 230 (“CDA”). The CDA specifies that “[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.” 47 U.S.C. § 230(c)(1). The CDA further provides that “[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.” 47 U.S.C. § 230(e)(3).
Protracted legal proceedings ensued, with Xcentric consistently refusing to remove the defamatory post. Even after the original user was subjected to an injunction prohibiting her from allowing the post to remain on the website, in response to which she begged Xcentric to remove the statements, Xcentric refused to comply. Ultimately, while Appellants were able to obtain an injunction prohibiting the maintenance of the posting on Xcentric’s website, that injunction was dissolved. Appellants seek review of the order dissolving the injunction and dismissing Xcentric.
Xcentric raises the same arguments it presented to the trial court. The Florida Supreme Court has held that the CDA provides absolute immunity to interactive computer services like Xcentric. In Doe v. America Online, Inc., 783 So.2d 1010 (Fla. 2001), an internet service provider that had allowed third parties to publish allegedly illegal postings on the internet was deemed immune from suit. Relying on the Fourth Circuit decision in Zeran v. Amer *1102 ica Online, Inc., 129 F.3d 327 (4th Cir. 1997), the Florida Supreme Court held that “section 230 expressly bars ‘any actions’ and we are compelled to give the language of this preemptive law its plain meaning.” Doe, 783 So.2d at 1018. Further, the Court adopted the reasoning of Zeran unambiguously, stating that it was accepting Zeran’s account of the scope and purpose of the CDA “as a basis for our reading of section 230.” Doe, 783 So.2d at 1015. That account included the statement that “Section 230 was enacted, in part, to maintain the robust nature of Internet communication and, accordingly, to keep government interference in the medium to a minimum.” Zeran, 129 F.3d at 330. Consequently, under Florida law, section 230 of the CDA “creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.” Id.
The business practices of Xcentric, as presented by the evidence before this Court, are appalling. Xcentric appears to pride itself on having created a forum for defamation. No checks are in place to ensure that only reliable information is publicized. Xcentric retains no general counsel to determine whether its users are availing themselves of its services for the purpose of tortious or illegal conduct. Even when, as here, a user regrets what she has posted and takes every effort to retract it, Xcentric refuses to allow it. Moreover, Xcentric insists in its brief that its policy is never to remove a post.[1] It will not entertain any scenario in which, despite the clear damage that a defamatory or illegal post would continue to cause so long as it remains on the website, Xcen-tric would remove an offending post.
However much as this Court may disapprove of business practices like those embraced by Xcentric, the law on this issue is clear. Xcentric enjoys complete immunity from any action brought against it as a result of the postings of third party users of its website.
The decision of the trial court is affirmed.

. As part of the record on appeal, Xcentric describes a “service” it provides to people and entities who wish to challenge false postings on Xcentric's website. This "service” is called the "Corporate Advocacy Program” by Xcentric. Individuals or businesses who believe they have been defamed by a posting on Xcentric's website must, according to the amicus brief filed in this case, "pay a tidy sum to be investigated by Xcentric’s management.” Moreover, "[i]n addition to a steep upfront charge, the business is required to make periodic payments to keep its status in the program." Xcentric further indicates on its website that the program "NEVER includes removal of complaints.” http://www. ripoffreport.com/ Consumers SayThank-You/WantToSueRipoffReport.aspx (emphasis in original).