DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**MEDYTOX SOLUTIONS, INC., SEAMUS LAGAN** and **WILLIAM G. FORHAN,**
Appellants,

v.

**INVESTORSHUB.COM, INC.,**
Appellee.

No. 4D13-3469

[ December 3, 2014 ]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; William W. Haury, Judge; L.T. Case No. 13004498 (13).

Michael C. Marsh, Francisco A. Rodriguez and Naim S. Surgeon of AKERMAN, LLP, Miami, for appellants.

Deanna K. Shullman and Allison S. Lovelady of Thomas & Locicero PL, Fort Lauderdale, for appellee.

TAYLOR, J.

This case concerns efforts by the plaintiffs to force an interactive computer service provider to remove statements from its website made by a third party that allegedly defamed the plaintiffs. We affirm the trial court's dismissal of the complaint for injunctive relief, because the website operator enjoys immunity from such relief under section 230 of the Communications Decency Act, 47 U.S.C. § 230.

The defendant, InvestorsHub.com, operates a website that serves as a forum for investors to discuss financial markets and information about public companies. According to the operative complaint, the website hosts nearly 85 million individual postings on almost 22,000 separate message boards, with new postings added at a rate of 40,000 new messages on each trading day.

In 2012, Christopher Hawley, using the screen name "Seamus outer," posted several allegedly defamatory statements about the plaintiffs,

Medytox Solutions, Inc., Seamus Lagan, and William Forhan, on the InvestorsHub website. In a separate action, Medytox Solutions and Mr. Lagan filed a third-party complaint against Hawley for defamation and tortious interference. The plaintiffs' counsel contacted the defendant and its counsel, seeking to have the postings removed from the website. The defendant removed two of Hawley's posts, but declined to remove the remaining two posts.

In February 2013, the plaintiffs brought an action for declaratory relief against the defendant for its failure to remove the allegedly defamatory postings from its website The plaintiffs later filed an amended complaint, adding a separate count for injunctive relief.

The defendant moved to dismiss the amended complaint on the grounds that it was immune as an internet service provider under the Communications Decency Act, and that equity would not enjoin a libel under Florida law. After a hearing, the trial court entered an order granting the defendant's motion to dismiss with prejudice, relying on case law from the Florida Supreme Court and the Third District. The trial court later entered a final order of dismissal.

On appeal, the plaintiffs argue that the Communications Decency Act does not preempt an equitable action under Florida law for the removal of libelous postings. They contend that the preemption recognized by the Florida Supreme Court is limited to tort-based claims seeking monetary liability, and that nothing in the Communications Decency Act suggests that Congress intended to preempt equitable claims for injunctive relief.

The defendant responds that the immunity afforded by section 230 of the Communications Decency Act broadly extends to "any action" against a provider of an interactive computer service if the action is premised upon the content of another. The defendant maintains that section 230 immunity applies with equal force in injunction matters as it does in actions seeking money damages.

"A trial court's ruling on a motion to dismiss based on a question of law is subject to de novo review." *Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.*, 752 So. 2d 582, 584 (Fla. 2000).

Section 230 of the Communications Decency Act states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Section 230 further states that "[n]o cause of action may be brought and no liability may be imposed

2

under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). Certain causes of action, however, are not barred by section 230, including actions based on federal criminal statutes, intellectual property law, and "any State law that is consistent with this section." 47 U.S.C. § 230(e)(1)-(3).

The plain language of section 230 "creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). Section 230 "precludes courts from entertaining claims that would place a computer service provider in a publisher's role." *Id.* Consequently, "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred." *Id.*

In enacting section 230, "Congress wanted to encourage the unfettered and unregulated development of free speech on the Internet, and to promote the development of e-commerce." *Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003). Section 230 was therefore designed, in part, "to maintain the robust nature of Internet communication and, accordingly, to keep government interference in the medium to a minimum." *Zeran*, 129 F.3d at 330.

Another specific purpose of section 230 was to overrule the decision in *Stratton Oakmont, Inc. v. Prodigy Services Co.*, 23 Media L. Rep. 1794, 1995 WL 323710 (N.Y. Sup. Ct. 1995), which held that an Internet Service Provider could be liable for defamatory statements if it exercised sufficient editorial control over its bulletin boards so as to render it a publisher. *See* S. REP. NO. 104-230, at 194 (1996) (Conf. Rep.). As the Fourth Circuit explained:

> Congress enacted § 230 to remove the disincentives to selfregulation [sic] created by the *Stratton Oakmont* decision. Under that court's holding, computer service providers who regulated the dissemination of offensive material on their services risked subjecting themselves to liability, because such regulation cast the service provider in the role of a publisher.

*Zeran*, 129 F.3d at 331.

In *Doe v. America Online, Inc.*, 783 So. 2d 1010, 1013-17 (Fla. 2001), the Florida Supreme Court held that section 230 preempts Florida law as

3

to causes of action based in negligence against an Internet Service Provider as a distributor of information. Our supreme court found the *Zeran* court's reasoning persuasive, adopting the Fourth Circuit's analysis of the history of the Communications Decency Act as a basis for its own reading of section 230. *Id.* at 1013-15. Accordingly, the court explained: "We specifically concur that section 230 expressly bars 'any actions' and we are compelled to give the language of this preemptive law its plain meaning." *Id.* at 1018.

Although *Doe v. America Online* does not specifically address the availability of injunctive relief, the Third District recently confronted this issue in *Giordano v. Romeo*, 76 So. 3d 1100 (Fla. 3d DCA 2011). In *Giordano*, a user of the website ripoffreport.com posted false and defamatory statements about the plaintiffs. The plaintiffs brought four defamation-based claims against the user, and one claim seeking injunctive relief against the website's operator, Xcentric. Although the plaintiffs initially obtained an injunction prohibiting the posting from remaining on the website, the trial court ultimately entered an order dissolving the injunction and dismissing Xcentric from the suit.

The Third District affirmed the dismissal, concluding that "Xcentric enjoys complete immunity from any action brought against it as a result of the postings of third party users of its website." *Id.* at 1102. Explaining that the Florida Supreme Court unambiguously adopted the *Zeran* court's interpretation of the Communications Decency Act, the Third District reasoned that "section 230 of the CDA 'creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" *Id.* (quoting *Zeran*, 129 F.3d at 330).

Moreover, other courts have found that the immunity afforded by section 230 encompasses claims for injunctive relief. *See Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 983-86 (10th Cir. 2000) (holding that section 230 immunized a computer service provider from a suit for damages and injunctive relief); *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 540 (E.D. Va. 2003) ("Indeed, given that the purpose of § 230 is to shield service providers from legal responsibility for the statements of third parties, § 230 should not be read to permit claims that request only injunctive relief."); *Kathleen R. v. City of Livermore*, 87 Cal.App.4th 684, 104 Cal.Rptr.2d 772 (Cal. Ct. App. 2001) (section 230 barred all the plaintiff's state law claims, including those for injunctive relief, arising out of a city library's failure to restrict her minor son's access to sexually explicit Internet materials); *Smith v. Intercosmos Media Grp., Inc.*, 2002 WL 31844907, at *5 (E.D. La. Dec. 17, 2002) (concluding that

section 230 provides immunity from claims for injunctive relief).

We affirm the trial court's dismissal of the plaintiffs' claim for injunctive relief, and in doing so, follow the Third District's reasoning in *Giordano*. The Third District's conclusion is consistent with the language and purpose of the Communications Decency Act. Section 230 states in broad terms that "[n]o cause of action may be brought *and* no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3) (emphasis added). The statute precludes not only "liability," but also causes of action for other forms of relief based upon any State or local law inconsistent with section 230. An action to force a website to remove content on the sole basis that the content is defamatory is necessarily treating the website as a publisher, and is therefore inconsistent with section 230.[1] Thus, by the plain language of the statute, the immunity afforded by section 230 encompasses the claims for declaratory and injunctive relief sought in this case.

*Affirmed.*

GROSS and GERBER, JJ., concur.

*　　*　　*

**Not final until disposition of timely filed motion for rehearing.**

---

[1] By contrast, where an action against a provider of an interactive computer service does not derive from the provider's status as a publisher or speaker, section 230 does not preclude the action. *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009) (section 230 barred negligence claim against the internet service provider (ISP), but did not bar a promissory estoppel claim based on the ISP's promise to remove from its website nude photographs of the plaintiff and other indecent materials posted by the plaintiff's ex-boyfriend; the asserted liability for promissory estoppel was not based upon the ISP's status as a publisher, but rather from its status as a promisor who displayed a manifest intention to be legally obligated to do something).