Filed 6/7/16

**CERTIFIED FOR PUBLICATION**

THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

DAWN HASSELL et al.,

     Plaintiffs and Respondents,

v.

AVA BIRD,

     Defendant;

YELP, INC.,

     Appellant.

A143233

(San Francisco City & County
Super. Ct. No. CGC-13-530525)

**I.**

**INTRODUCTION**

Respondents Dawn Hassell and the Hassell Law Group (Hassell)[1] obtained a judgment holding defendant Ava Bird liable for defamation and requiring her to remove defamatory reviews she posted about Hassell on Yelp.com, a Web site owned by appellant Yelp, Inc. (Yelp). The judgment also contains an order requiring Yelp to remove Bird's defamatory reviews from its Web site (the removal order). Yelp, who was not a party in the defamation action, filed a motion to vacate the judgment which the trial court denied.

On appeal, the parties raise numerous issues relating to the judgment against Bird, and the subsequent removal order. As to those issues, we conclude as follows: (1) Yelp is not "aggrieved" by the defamation judgment entered against Bird, but it is "aggrieved"

---

[1] Generally, we will refer to respondents collectively, using the singular, gender neutral pronoun form where appropriate.

by the removal order; (2) Yelp's trial court motion to vacate was not cognizable under Code of Civil Procedure section 663[2]; (3) Yelp has standing to challenge the validity of the removal order as an "aggrieved party," having brought a nonstatutory motion to vacate that order; (4) Yelp's due process rights were not violated because of its lack of prior notice and a hearing on the removal order request; (5) the removal order does not violate Yelp's First Amendment rights to the extent that it requires Yelp to remove Bird's defamatory reviews; (6) to the extent it purports to cover statements other than Bird's defamatory reviews, the removal order is an overbroad unconstitutional prior restraint on speech; and (7) Yelp's immunity from suit under the Communications Decency Act of 1996 (the CDA), 47 United States Code section 230, does not extend to the removal order.

Therefore, although we affirm the order denying Yelp's motion to vacate the judgment, we will remand this case so that the trial court can narrow the terms of the removal order in a manner consistent with this decision.

## II.

## STATEMENT OF FACTS

### A. *The Complaint*

Hassell's April 2013 complaint against Bird arose out of Hassell's legal representation of Bird for a brief period during the summer of 2012. The complaint alleged the following facts about that representation: Bird met with Hassell in July to discuss a personal injury she had recently sustained. On August 20, Bird signed an attorney-client fee agreement. However, on September 13, 2012, Hassell withdrew from representing Bird because they had trouble communicating with her and she expressed dissatisfaction with them. During the 25 days that Hassell represented Bird, Hassell had at least two communications with Allstate Insurance Company about Bird's injury claim and notified Bird about those communications via e-mail. Hassell also had dozens of

_____

[2] All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

2

direct communications with Bird by e-mail and phone and at least one in-person meeting. When legal representation was withdrawn, Bird had 21 months before the expiration of the statute of limitations on her personal injury claim, and had not lost any rights or claims relating to her injury.

Hassell further alleged that, on January 28, 2013, Bird published a review on Yelp.com about her experience with Hassell (the January 2013 review). Hassell attempted to contact Bird by phone to discuss the publication, but she failed to return the call, so the firm sent her an e-mail "requesting she remove the factual inaccuracies and defamatory remarks from her Yelp.com written statement." In an e-mail response, Bird made derogatory comments about Dawn Hassell's legal skills, refused to remove the January 2013 review, and threatened to post an updated review and to have another review posted by someone else.

According to the complaint, on February 6, 2013, Bird or her agent created a "fake Yelp identity, using the pseudonym 'J.D.,' from Alameda," to post another negative review about the Hassell firm on Yelp.com (the February 2013 review). Hassell believed that Bird was "J.D." because Hassell never represented a client with the initials J.D., and because the February 2013 review was posted shortly after the January 2013 review and used similar language.

In their complaint, Hassell alleged causes of action against Bird for defamation, trade libel, false light invasion of privacy, and intentional infliction of emotional distress. In a fifth cause of action for injunctive relief, Hassell alleged that Bird's ongoing wrongful acts were the direct and proximate cause of substantial pecuniary losses and irreparable injury to Hassell's business reputation and good will, and that they were entitled to an injunction because there was no adequate remedy at law to compensate them for their continuing injuries.

In their prayer for judgment, Hassell sought general and special damages, each in excess of $25,000, according to proof, and punitive damages in an unspecified amount. Hassell also prayed for "injunctive relief prohibiting Defendant Ava Bird from continuing to defame plaintiffs as complained of herein, and requiring Defendant Ava

3

Bird to remove each and every defamatory review published by her about plaintiffs, from Yelp.com and from anywhere else they appear on the internet."

**B.** *Yelp Reviews about Hassell*

The allegedly defamatory statements about Hassell that were posted on Yelp.com were attached as exhibits to the Hassell complaint.

The January 2013 review was posted by a reviewer who used the name "Birdzeye B. Los Angeles, CA." It was identified by Yelp as one of "10 reviews for The Hassell Law Group" that Yelp used to give Hassell an overall star rating of four and one-half out of five stars. Birdzeye B., however, gave Hassell a rating of one out of five stars, and stated that the law firm did not even deserve that. The reviewer's critique was directed at both the Hassell firm and Dawn Hassell personally, who was accused of "ma[king] a bad situation worse for me," and reneging on her obligations because "her mom had a broken leg" and because "the insurance company was too much for her to handle." The review also stated: "the hassell law group didn[']t ever speak with the insurance company either, neglecting their said responsibilities and not living up to their own legal contract! nor did they bother to communicate with me, the client or the insurance company AT ALL . . . ."

The February 2013 review was posted by a reviewer who used the name "J.D. Alameda, CA." It was identified by Yelp as one of "11 Filtered Reviews for The Hassell Law Group." Yelp posted a note advising its users that filtered reviews "are not factored into the business's overall star rating." The user who posted the February 2013 review gave Hassell a one star rating and provided the following information: "Did not like the fact that they charged me their client to make COPIES, send out FAXES, POSTAGE, AND FOR MAKING PHONE CALLS about my case!!! Isn't that your job. That's just ridiculous!!! They Deducted all those expenses out of my settlement." (Original capitalization.)

**C.** *The Default Judgment*

On April 17, 2013, Hassell served Bird by substitute service with a summons, the complaint, an alternative resolution package, a civil case information sheet, a statement of damages and an attorney letter. On June 18, 2013, Hassell filed a request for the

4

superior court clerk to enter a default against Bird, who had failed to answer Hassell's complaint. Default was entered and filed on July 11, 2013.

On November 1, 2013, Hassell filed a notice of hearing on their application for default judgment and request for injunctive relief. The application was supported by a "plaintiffs' summary of the case," which provided additional details about matters alleged in the complaint, and also described a third review that Bird allegedly posted on Yelp.com on April 29, 2013 (the April 2013 review).

Hassell's case summary also argued the merits of its case. In support of its request for injunctive relief, Hassell argued that "once the trier of fact has determined [Bird] made defamatory statements," the court would have authority to issue an injunction, and that if the same showing could be made at a prove-up hearing, a comparable injunction would be proper. Hassell reasoned that denying injunctive relief after a default prove-up hearing would mean a plaintiff can be forced to suffer defamatory harm so long as the defendant refuses to answer the complaint. Hassell requested that the injunction contain a provision requiring Yelp to remove the defamatory reviews in the event that Bird failed to do so, which was likely in light of her history of "flaunting" California's court system.

Through declarations from Dawn Hassell and another Hassell attorney named Andrew Haling, Hassell filed extensive documentary evidence, including Bird's attorney-client agreement, correspondence between Hassell and Bird, evidence of damages, and comments about Hassell that were posted on Yelp.com., including the April 2013 review that Hassell identified in its case summary as another defamatory statement by Bird.

The April 2013 review was posted by "Birdseye B. Los Angeles, CA, and was identified by Yelp as one of "11 reviews for The Hassell Law Group" that Yelp used to calculate Hassell's overall star rating. The reviewer described his or her statements as an update to Birdseye B.'s earlier review and then stated that Dawn Hassell had filed a lawsuit "against me over this review," and that she "tried to threaten, bully, intimidate, [and] harass me into removing the review!" Birdseye B. also stated: "the staff at YELP has stepped up and is defending my right to post a review. once again, thanks YELP! . . ."

5

On January 14, 2014, a default prove-up hearing was held before the Honorable Donald Sullivan. Although a transcript of that hearing is not in the appellate record, the court's minute order reflects that Dawn Hassell and Andrew Haling appeared on behalf of Hassell and there was no appearance by Bird. Dawn Hassell was sworn and testified, and, after considering all the evidence, the court entered judgment against Bird. Hassell was awarded general and special damages and costs totaling $557,918.75, but was denied punitive damages. The Bird judgment also awarded Hassell injunctive relief pursuant to the following provisions:

"Plaintiffs' Request for Injunctive Relief is Granted. Defendant AVA BIRD is ordered to remove each and every defamatory review published or caused to be published by her about plaintiffs HASSELL LAW GROUP and DAWN HASSELL from [Y]elp.com and from anywhere else they appear on the internet within 5 business days of the date of the court's order.

"Defendant AVA BIRD, her agents, officers, employees or representatives, or anyone acting on her behalf, are further enjoined from publishing or causing to be published any written reviews, commentary, or descriptions of DAWN HASSELL or the HASSELL LAW GROUP on Yelp.com or any other internet location or website.

"Yelp.com is ordered to remove all reviews posted by AVA BIRD under user names 'Birdzeye B.' and 'J.D.' attached hereto as Exhibit A *and any subsequent comments of these reviewers* within 7 business days of the date of the court's order." (Italics added.)

On January 15, 2014, Hassell served Bird with notice of entry of judgment. Bird did not appeal, and the judgment became final on March 16, 2014. (Cal. Rules of Court, rule 8.104.) [3]

---

[3] A " ' "default judgment conclusively establishes, between the parties so far as subsequent proceedings on a different cause of action are concerned, the truth of all material allegations contained in the complaint in the first action, and every fact necessary to uphold the default judgment." ' [Citations.]" (*Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, 149.)

6

**D.** *Hassell's Efforts to Enforce the Judgment*

On January 15, 2014, Hassell hand-delivered a copy of the Bird judgment to an attorney employed by Yelp named Laurence Wilson, along with a letter requesting that Yelp comply with the judgment. On January 28, Hassell caused the judgment to be personally served on Yelp's national registered agent for service of process. In a letter served with the judgment, Dawn Hassell highlighted the following circumstances: Yelp had failed to comply with the court deadline for removing Bird's defamatory reviews; Laurence Wilson had not replied to Dawn Hassell's January 15 letter or returned phone calls from Hassell; and "Yelp, Inc.'s non-compliance with the court's order will become the subject of contempt proceedings and a further lawsuit against Yelp if Yelp refuses to comply [with the judgment] as my business is being further damaged."

Yelp's senior director of litigation, Aaron Schur, responded to Dawn Hassell in a February 3, 2014 letter. Schur stated that Yelp objected to the judgment "to the extent directed at Yelp itself" for three reasons: (1) Yelp was a nonparty to the litigation; (2) Yelp was immune from liability for it publication of a review; and (3) Hassell failed to properly serve Bird or prove its defamation claims against her. Schur also informed Hassell that Yelp had made the decision not to comply with the judgment, stating: "the judgment and order are rife with deficiencies and Yelp sees no reason at this time to remove the reviews at issue. Of course, Yelp has no desire to display defamatory content on its site, but defamation must first be proven." Schur stated that Yelp would "revisit its decision" if it was presented with stronger evidence. He also warned that Hassell's "threats" of litigation against Yelp were not well taken because Yelp would file a motion to dismiss and recover attorney fees under the anti-SLAPP law, "as it has done in the past in similar cases."

In an April 30, 2014 letter to Schur, Dawn Hassell asked that Yelp reconsider its position in light of the facts that Bird had refused to comply with the judgment, and, as a practical matter, she was judgment proof because the award against her was uncollectable. Dawn Hassell also objected to a recent decision by Yelp to recommend one of Bird's defamatory reviews. As Hassell explained, "I also take issue with the fact

7

that Yelp has now highlighted these defamatory reviews by user 'Birdzeye B.' (already confirmed to be Defendant Bird) by listing them as 'Recommended Reviews,' so other Yelp visitors see these defamatory reviews first, above more recent, honest, positive reviews."

Finally, Dawn Hassell advised Schur of her plan to file a motion to enforce the judgment. She reminded him that she had sought Yelp's assistance before initiating litigation, but was informed by Yelp that her only recourse was against Bird. However, after obtaining a judgment against Bird, it was now clear that the only remedy available to Hassell was to have Yelp take down the reviews. Ms. Hassell stated that if Yelp believed the injunction was too broad, she was "willing to discuss stipulating with you to terms pertaining to Yelp that would be more agreeable, for settlement purposes only, and before the motion to enforce the court's order is heard."

### E. *Yelp's Motion to Set Aside the Judgment*

On May 23, 2014, Yelp filed a notice of motion and motion to set aside and vacate the Bird judgment pursuant to section 663 on the "grounds that the legal basis for the decision is not consistent with or supported by the facts or applicable law." In its supporting memorandum, Yelp alleged it had standing to bring the motion as an "aggrieved party," even though it was a nonparty in the action. Yelp then argued the trial court was required to vacate the Bird judgment because: (1) Hassell's failure to name Yelp as a party defendant violated Yelp's right to due process; (2) Yelp was immune from liability for posting Bird's reviews pursuant to the CDA, 47 United States Code section 230; (3) the judgment violated section 580 by awarding relief that Hassell did not request in their complaint; and (4) the judgment subverted Bird's First Amendment rights by suppressing speech that Hassell failed to prove was defamatory.

On July 8, 2014, the Honorable Ernest H. Goldsmith ordered Yelp's motion off calendar and directed Yelp to reschedule its motion in a different department of the superior court before Judge Sullivan, explaining: "The moving party seeks to vacate or modify Judge Sullivan's judgment and he should make the determination regarding the propriety of that request."

8

On July 23, 2014, Yelp filed a re-notice of its motion to vacate and set aside the Bird judgment. Yelp's re-notice did not reference section 663 or any other statutory ground for the motion, but explicitly relied on the memorandum and other pleadings Yelp had already filed in support of its motion to vacate. Furthermore, Yelp stated that its motion was being re-noticed in the same department as previously noticed, pursuant to the instruction of the presiding judge of the superior court.

On August 27, 2014, Judge Goldsmith held a hearing on Yelp's motion to vacate, accepted evidence, entertained arguments and then took the matter under submission. On September 29, 2014, the court filed an order denying Yelp's motion to set aside and vacate the judgment (the September 2014 order). The September 2014 order contains two sets of findings.

First, regarding the judgment itself, the court found that Judge Sullivan (1) conducted a court trial, (2) made a finding that Bird's postings about Hassell on Yelp.com were defamatory; (3) granted injunctive relief against Bird which required her to remove her defamatory reviews from Yelp.com; and (4) also ordered nonparty Yelp to remove the defamatory reviews. Judge Goldsmith then concluded that, under California law, an injunction can be "applied to" a nonparty by virtue of its relationship to an enjoined party. (Citing *Ross v. Superior Court* (1977) 19 Cal.3d 899, 906 (*Ross*).)

The second set of findings in the September 2014 order pertained to "Hassell's contention that Yelp is aiding and abetting Bird's violation of the injunction." The court found that the evidence showed that (1) Yelp highlighted Bird's defamatory reviews on Yelp.com by explicitly recommending one of her reviews, and also by refusing to take account of a "litany" of favorable reviews that users had posted when it calculated a "star rating" for the Hassell law firm; (2) Yelp's motion to vacate was not limited to its own interests, but sought to vacate the entire Bird judgment by making arguments that pertained only to the propriety of the judgment against Bird; and (3) Yelp refused to acknowledge or abide by a judicial finding that Bird's reviews are defamatory notwithstanding that its own terms of service require Yelp.com users to agree not to post a "fake or defamatory review. . . ." Based on these findings, the court concluded that

9

"Yelp is aiding and abetting the ongoing violation of the injunction and that Yelp has demonstrated a unity of interest with Bird."

**III.**

**DISCUSSION**

**A. *Preliminary Considerations***

In its opening brief on appeal, Yelp requests that this court "reverse and vacate the trial court's judgment." Yelp appears to assume that the denial of its motion to vacate conferred standing on it to appeal the entire Bird judgment. At the same time, however, Yelp strenuously insists that it is not and never has been a "party" in this case. Adding to the confusion, Hassell contends that the trial court did not have "jurisdiction" to hear Yelp's section 663 motion, to which Yelp responds that courts have inherent power to set aside void judgments. To sort these issues and clarify the scope of this appeal, we begin by considering the two prerequisites for appellate standing.

"Standing to appeal is jurisdictional [citation] and the issue of whether a party has standing is a question of law [citation]." (*People v. Hernandez* (2009) 172 Cal.App.4th 715, 719.) To "have appellate standing, one must (1) be a party and (2) be aggrieved. [Citations.]" (*In re Marriage of Burwell* (2013) 221 Cal.App.4th 1, 12-13; see also § 902 ["Any party aggrieved may appeal in the cases prescribed in this title."].) "[A] nonparty that is aggrieved by a judgment or order may become a party of record and obtain a right to appeal by moving to vacate the judgment [citation]." (*People v. Hernandez*, at pp. 719-720.)

**1. Yelp Is Not "Aggrieved" By the Judgment Against Bird, But Is "Aggrieved" By the Removal Order**

"One is considered 'aggrieved' whose rights or interests are injuriously affected by the judgment. [Citations.] Appellant's interest ' "must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment." ' [Citation.]" (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737 (*Carleson*).)

Applying this test, we conclude that Yelp is not aggrieved by the default judgment against Bird. Awarding Hassell damages and injunctive relief with respect to Bird's

10

defamatory remarks did not cause Yelp to suffer a substantial immediate pecuniary injury of any kind.  Bird was the party aggrieved by that judgment and she elected not to appeal.  On the other hand, the judgment contains an additional provision which expressly requires Yelp to remove Bird's reviews from Yelp.com.  This removal order directly affects the operation of Yelp's business and potentially carries some pecuniary consequence.  Thus, Yelp was aggrieved by the removal order for purposes of establishing standing.

Throughout proceedings in the trial court and on appeal, Yelp has endeavored to blur the distinction between the judgment entered against Bird which awarded Hassell damages and injunctive relief, and the removal order in the judgment which directs Yelp to effectuate the injunction against Bird.  For example, Yelp asserted trial court standing to bring a motion to vacate on the ground that "Yelp's rights and interests to maintain its Site as it deems appropriate [were] injuriously affected by the Judgment."  However, this claimed injury did not result from the judgment itself, but only from the removal order requiring Yelp to effectuate the injunction against Bird.  To the extent Yelp has ever meant to contend that an injunction requiring Bird to remove defamatory statements from the Internet injuriously affects Yelp, we disagree.  Yelp's claimed interest in maintaining Web site as it deems appropriate does not include the right to second-guess a final court judgment which establishes that statements by a third party are defamatory and thus unprotected by the First Amendment.

Since Yelp was not aggrieved by the default judgment entered against Bird, it had no standing to challenge that judgment in the trial court.  Thus, this court will not address arguments regarding the validity of the Bird judgment itself including, for example,

11

Yelp's theory regarding perceived defects in Hassell's complaint against Bird, and its contention that Hassell failed to prove their defamation claim against Bird.[4]

## 2. Yelp's Motion to Vacate Was Not Authorized by Section 663

As already noted, a legally aggrieved nonparty to a judgment or decree may "become a party of record and obtain a right to appeal by moving to vacate the judgment pursuant to Code of Civil Procedure section 663. [Citations.]" (*Carleson*, *supra*, 5 Cal.3d at p. 736.)

Section 663 states: "A judgment or decree, when based upon a decision by the court, or the special verdict of a jury, may, upon motion of the party aggrieved, be set aside and vacated by the same court, and another and different judgment entered, for either of the following causes, materially affecting the substantial rights of the party and entitling the party to a different judgment: [¶] 1. Incorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts; and in such case when the judgment is set aside, the statement of decision shall be amended and corrected. [¶] 2. A judgment or decree not consistent with or not supported by the special verdict."

Section 663 "is designed to enable speedy rectification of a judgment rendered upon erroneous application of the law to facts which have been found by the court or jury or which are otherwise uncontroverted. [Citation.]" (*Forman v. Knapp Press* (1985) 173 Cal.App.3d 200, 203 (*Forman*).) Thus, " 'section 663 is a remedy to be used when a trial court draws incorrect conclusions of law or renders an erroneous judgment on the basis of uncontroverted evidence.' [Citation.]" (*Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 14 (*Plaza Hollister*); see also *Carleson*, *supra,* 5 Cal.3d at p. 738 [§ 663 motion is properly "made whenever the trial judge draws an

---

[4] As noted, Bird elected not to appeal the judgment, but even if she had, Bird herself could not have challenged the sufficiency of the evidence to support the liability findings in the default judgment. (*Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1303.) Clearly then, Yelp's claimed injury from the removal order did not authorize its attempted challenge to the sufficiency of the evidence to support the judgment against Bird.

12

incorrect legal conclusion or renders an erroneous judgment upon the facts found by it to exist"].)

However, relief is available under section 663 only where a "different judgment" is compelled by the facts found by a judge or jury. (*Payne v. Rader* (2008) 167 Cal.App.4th 1569, 1574; *Plaza Hollister*, *supra*, 72 Cal.App.4th at p. 14.) In ruling on a section 663 motion, "the court cannot ' "in any way change any finding of fact." ' [Citation.]" (*Glen Hill Farm, LLC v. California Horse Racing Bd.* (2010) 189 Cal.App.4th 1296, 1302.) By the same token, section 663 does not authorize a challenge to the sufficiency of the evidence to support the judgment. (*Simac Design, Inc. v. Alciati* (1979) 92 Cal.App.3d 146, 152-153.) Nor can the procedure be used to secure additional findings that were not made before judgment was entered. (*Mardesich v. C. J. Hendry Co*. (1942) 51 Cal.App.2d 567, 576.)

In the present case, Yelp used its motion to vacate to seek relief that was not available under section 663. First, Yelp requested that the entire judgment be vacated, not that it be corrected to conform to the findings of the trier of fact. Second, many of Yelp's arguments were direct or indirect challenges to the sufficiency of the evidence to support the Bird judgment. In addition to the fact that Yelp was not aggrieved by the default judgment against Bird, these claims were not cognizable in the context of a section 663 motion to vacate. Third, both Yelp and Hassell improperly used section 663 to seek additional findings of fact in order to resolve their collateral disagreement about whether Yelp became Bird's aider and abettor *after* the judgment was entered.

### 3. Yelp's Statutory Motion to Vacate Was Untimely

In addition to the substantive flaws discussed immediately above, Yelp's section 663 motion was not timely filed. Section 663a imposes time restrictions on a party's decision to file a motion to vacate a judgment under section 663, and on the trial court's authority to rule on such a motion. Two provisions of section 663a are pertinent here. First, subdivision (a) requires "[a] party" to file a notice of intent to file a section 663 motion within 15 days of the date it was served with notice of entry of judgment. Second, subdivision (b) states that "the power of the court to rule on a motion to set aside

13

and vacate a judgment shall expire 60 days . . . after service upon the moving party by any party of written notice of entry of the judgment . . . ." (§ 663a, subds. (a), (b).)

In the present case, Yelp's agent for service of process was served with the judgment on January 28, 2014. Yelp then waited 116 days before filing a notice of motion and motion to vacate the Bird judgment. Thus, Yelp not only failed to comply with the 15-day time limit for filing a notice of intent to file a motion to vacate, its tardy decision to bring the motion precluded the trial court from ruling on it within the statutory time period applicable to section 663 motions.

Yelp contends it was not subject to the time restrictions imposed by section 663a because it was not a party of record when the judgment was entered. (Citing *Aries Dev. Co. v. Cal. Coastal Zone Conservation Com.* (1975) 48 Cal.App.3d 534, 542 (*Aries*).) *Aries* was an appeal from a mandate judgment requiring the California Coastal Commission to issue a building permit. Before the commission filed its notice of appeal, an aggrieved neighbor filed a section 663 motion to vacate the judgment, which the trial court denied. On appeal, the respondent argued that the appellant-neighbor did not have standing because the commission filed its notice of appeal before the trial court ruled on the section 663 motion, thereby divesting the trial court of authority to do so. The *Aries* court disagreed, reasoning that the aggrieved neighbor became a party of record by filing its section 663 motion and its "right of appeal could not be destroyed by the fact that a subsequent event over which [it] had no control may have divested the court of jurisdiction to rule on the merits of the motion." (*Aries*, at p. 542.) More relevant to Yelp's appeal, the *Aries* court also rejected the respondent's related theory that the section 663 motion was untimely because it had not been filed "within the 15-day period prescribed by" section 663a. (*Aries*, at p. 542.) The court reasoned that the 15-day time limit only applies to "those who were parties of record when judgment was entered," and the appellant-neighbor did not become a party of record until he filed his motion to vacate. (*Ibid*.)

If applied without reflection, *Aries* supports Yelp's contention that it was not subject to the 15-day filing requirement in subdivision (a) of section 663a because it did

14

not become a "party" until it actually filed its motion to vacate. (*Aries*, *supra*, 48 Cal.App.3d at p. 542.) However, the procedural facts in *Aries* did not raise any substantive concern about the timeliness of the section 663 motion in that case, as it was filed before the commission filed a notice of appeal. (*Aries*, at p. 542.) Here, by contrast, Yelp filed its motion to vacate after the time for Bird to appeal the judgment had expired. Furthermore, by waiting more than 100 days after it was served with notice of entry of the judgment before filing its motion to vacate, Yelp precluded the trial court from complying with the 60-day outside time limit to rule on the motion as set out in section 663a, subdivision (b). We note too that this latter time limit provision was added to the statute in 2012, several years after *Aries* was decided. (See 2012 Amendment in Deering's Ann. Code Civil Proc. (2015 ed.) foll. § 663a under heading Amendments, p. 363.)

Unlike the 15-day filing rule in section 663a, subdivision (a), which expressly applies only to a "party," the time limitation in subdivision (b) restricts the "power of the court to rule" on a section 663 motion, and uses mandatory language to set an outside limit of 60 days from the date the moving party was served with written notice of entry of judgment. Strictly enforcing this 60-day limitation is consistent with the function of this specific type of statutory motion, which is to afford the decision maker a mechanism for the *speedy* rectification of an easily correctible error in the judgment. (See *Forman*, *supra*, 173 Cal.App.3d at p. 203.) Yelp does not cite any authority excepting it from the 60-day rule set forth in section 663a, subdivision (b).

Yelp takes the view that an aggrieved nonparty should be allowed to file any type of statutory motion to vacate a judgment within a reasonable time not exceeding six months from the entry of judgment. This argument ignores the authority of section 663a itself, and is based on an apparent misreading of *Plaza Hollister*, *supra*, 72 Cal.App.4th 1. The *Plaza Hollister* court held that the appellant in that case had filed an invalid section 663 motion in the trial court, but that it had appellate standing pursuant to a *nonstatutory* motion to vacate that was filed within a reasonable time after entry of

15

judgment.  (*Plaza Hollister*, at p. 19.)  *Plaza Hollister* reinforces our conclusion that, under the circumstances presented here, Yelp was not entitled to relief under section 663.

### 4. Yelp Acquired Standing By Filing a Nonstatutory Motion to Vacate

Like the motion at issue in *Plaza Hollister, supra,* 72 Cal.App.4th 1, Yelp's trial court motion to vacate was not based solely on section 663; Yelp also sought to invoke the court's inherent power to vacate a void judgment.  Indeed, as discussed in our factual summary, Yelp's re-notice of its motion deleted any reference to section 663.  Furthermore, Yelp's trial court pleadings repeatedly characterized the Bird judgment as void.

" 'A stranger to an action who is aggrieved by a void judgment may move to vacate the judgment, and on denial of the motion may have the validity of the judgment reviewed upon an appeal from the order denying the motion.  [Citations.]'  [Citation.] . . .  It has also been said: '[A] stranger may attack a void judgment if some right or interest in him would be affected by its enforcement.  [Citations.]'  [Citation.]" (*Plaza Hollister, supra*, 72 Cal.App.4th at pp. 15-16.)  Furthermore, the "granting of relief, which a court under no circumstances has any authority to grant, has been considered an aspect of fundamental jurisdiction for the purposes of declaring a judgment or order void." (*Id.* at p. 20; see *Selma Auto Mall II v. Appellate Department* (1996) 44 Cal.App.4th 1672, 1683 ["When a court grants relief which it has no authority to grant, its judgment is to that extent void."].)

This type of nonstatutory motion was the correct mechanism for Yelp to employ to challenge a portion of the Bird judgment on the ground that it contains an allegedly void removal order.  Furthermore, treating Yelp's motion as a nonstatutory motion eliminates Hassell's concerns about its timeliness.  " '[A] judgment or order, which is in fact void for want of jurisdiction, but the invalidity of which does not appear from the judgment-roll or record, may be set aside on motion within a reasonable time after its entry, not exceeding the [six month] time limit prescribed by [former] section 473 of the Code of Civil Procedure; and an independent suit in equity to set aside the judgment or order is

16

not necessary.  [Citations.]' " (*Plaza Hollister*, *supra*, 72 Cal.App.4th at p. 19.)  Here, Hassell argues that Yelp's motion was not filed within a reasonable time, but the record does not compel that conclusion.

The considerations outlined above lead to the following conclusions regarding Yelp's standing to appeal:  Yelp is aggrieved by the removal order directing Yelp to remove Bird's defamatory reviews from Yelp.com; Yelp became a party of record in this case by filing a nonstatutory motion to vacate the allegedly void order within a reasonable time after entry of the judgment; and, therefore, Yelp has standing to appeal the removal order provision contained in the Bird judgment.

The substantive issue raised by this appeal is whether the trial court had the legal authority to make the removal order directing Yelp to remove Bird's defamatory reviews from Yelp.com.  Yelp contends that Judge Sullivan did not have that authority because the removal order (1) violates due process; (2) constitutes a prior restraint of speech; and (3) is barred by the CDA.  Before considering these claims of legal error, we briefly address two circumstances that are mentioned above in order to further clarify the scope of our review.

First, Yelp attempts to characterize the removal order as an injunction against Yelp.  We do not accept that characterization.  The judgment was entered solely against Bird, and the injunctive order was directed solely at Bird's defamatory speech.[5]  The removal order was limited to statements covered by that injunction, statements attributed to Bird which she had been ordered to remove.  Thus, the removal order does not impose any independent restraint on Yelp's autonomy.  Under these circumstances, charactering the removal order as an injunction creates unnecessary confusion about the clear distinction between the removal order and the underlying injunction against Bird.  For reasons already discussed, Yelp cannot bootstrap its collateral attack of an allegedly void

---

[5]  "[O]nce a court has found that a specific pattern of speech is unlawful, an injunctive order prohibiting the repetition, perpetuation, or continuation of that practice is not a prohibited 'prior restraint' of speech.  [Citation.]" (*Aguilar v. Avis Rent A Car System, Inc*. (1999) 21 Cal.4th 121, 140.)

order into a substantive appeal of the default judgment itself. The question whether the trial court should have granted an injunction against Bird is outside the scope of this appeal.

Second, the September 2014 order denying Yelp's motion to vacate the judgment contains findings and a conclusion responsive to Hassell's contention that Yelp was aiding and abetting Bird's violation of the judgment. However, it appears that neither the trial court nor the parties ever considered whether that issue was cognizable in the context of a motion to vacate a judgment. As we have explained, the only issue properly raised by Yelp's nonstatutory motion to vacate was whether Judge Sullivan was without power to make the removal order that implemented the injunction against Bird. What Yelp did after the judgment was entered—whether it became an aider and abettor with respect to Bird's postjudgment violation of the injunction—is a separate issue which may be relevant in a future contempt action against Yelp for disobedience of the judgment. But Judge Goldsmith's adjudication of that issue was premature, and was also potentially improper to the extent proceedings were conducted without the procedural safeguards attendant to a contempt proceeding. In any event, findings of fact regarding Yelp's aiding and abetting are irrelevant to the issues properly raised in this appeal. Therefore, those findings will have no bearing on our disposition of this appeal.

**B.** *Due Process*

Yelp contends that the removal order was barred by due process because the trial court did not afford Yelp notice or a hearing before the order was entered. There are two distinct prongs to Yelp's due process theory: first, that the trial court could not order Yelp to implement the injunction because it was not a party in the defamation action; and second, that prior notice and a hearing were mandatory because the removal order impinged on Yelp's First Amendment right to "host" Bird's reviews.

**1. An Injunction Can Run Against a Nonparty**

" ' " 'An injunction is obviously a personal decree. It operates on the person of the defendant by commanding him to do or desist from certain action.' " [Citation.]' [Citation.] Indeed it may 'deprive the enjoined parties of rights others enjoy precisely

18

because the enjoined parties have abused those rights in the past.' [Citation.] Thus, it is well established that 'injunctions are not effective against the world at large. [Citations.]' [Citations.] On the other hand, the law recognizes that enjoined parties 'may not nullify an injunctive decree by carrying out prohibited acts with or through nonparties to the original proceeding. [Citations.]' [Citation.] Thus, an injunction can properly run to classes of persons with or through whom the enjoined party may act. [Citations.] However, 'a theory of disobedience of the injunction cannot be predicated on the act of a person not in any way included in its terms or acting in concert with the enjoined party and in support of his claims.' [Citations.]" ' " (*Planned Parenthood Golden Gate v. Garibaldi* (2003) 107 Cal.App.4th 345, 352-353; see also *People v. Conrad* (1997) 55 Cal.App.4th 896, 902; *In re Berry* (1968) 68 Cal.2d 137, 155-156; *Berger v. Superior Court* (1917) 175 Cal. 719, 721.)

These settled principles undermine Yelp's theory that the trial court was without any authority to include a provision in the Bird judgment which ordered Yelp to effectuate the injunction against Bird by deleting her defamatory reviews. As Judge Goldsmith observed in the order denying Yelp's motion to vacate, our Supreme Court has explicitly confirmed that injunctions can be applied to nonparties in appropriate circumstances. (*Ross*, *supra*, 19 Cal.3d at p. 906.) " 'In matters of injunction . . . it has been a common practice to make the injunction run also to classes of persons through whom the enjoined person may act, such as agents, servants, employees, aiders, abettors, etc., though not parties to the action, and this practice has always been upheld by the courts, and any of such parties violating its terms with notice thereof are held guilty of contempt for disobedience of the judgment." (*Ibid.*)

Yelp contends that the rule permitting a court to enforce an injunction against a nonparty is limited to situations in which "a group or organization has been enjoined, so as to prevent the group's individual members who are not named in the injunction from acting on behalf of that group." As support for this claimed limitation, Yelp cites *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090 (*Acuna*). The issue in *Acuna* was whether designated members of a criminal street gang who were named defendants in a public

19

nuisance action could be subject to an injunction because of the documented activities of the group to which they belonged. In approving such an injunction, the *Acuna* court did not impose any restriction on a court's authority to issue an injunction which runs also to a nonparty. Nor did it even consider that question.

Yelp cites two additional cases to support its contention that the trial court could not order a nonparty to effectuate the injunction against Bird: *Fazzi v. Peters* (1968) 68 Cal.2d 590 (*Fazzi*) and *Tokio Marine & Fire Ins. Corp. v. Western Pacific Roofing Corp.* (1999) 75 Cal.App.4th 110, 120-121 (*Tokio Marine*).

*Fazzi*, *supra*, 68 Cal.2d at page 591, was a damages action against a partnership. The appellant was an alleged partner who had been served with process but had not been made a party to the underlying action against the partnership. Neither the appellant, nor his alleged copartner, nor the partnership appeared in the action, and a judgment of default was entered holding each of them individually and doing business as a copartnership jointly and severally liable for money damages in the approximate amount of $49,000. (*Id*. at p. 592.) The *Fazzi* court reversed the default judgment against the appellant, applying " 'the general rule that a judgment may not be entered either for or against a person who is not a party to the proceeding, and any judgment which does so is void to that extent.' [Citations.]" (*Id*. at pp. 594-595, 598.)

*Tokio Marine*, *supra*, 75 Cal.App.4th 110, involved a lawsuit to determine fault for a fire as between a general contractor and a roofing contractor. (*Id.* at p. 119.) After judgment was entered in favor of the roofing contractor, the trial court summarily granted the roofing contractor's motion to amend the judgment to add the general contractor's insurer as an additional judgment debtor. On appeal, the *Tokio Marine* court reversed the judgment against the insurer, finding that the insurer was not a party in the action or an alter ego of the original defendant. Furthermore, the court found that the summary addition of the insurer as an additional judgment debtor violated due process. (*Id*. at pp. 120-121.)

*Fazzi* and *Tokio Marine* are inapposite because both cases involved money judgments that were entered against nonparties to the litigation. Here, by contrast, the

damages portion of the judgment was entered solely against Bird. Neither *Fazzi* nor *Tokio Marine* address whether an injunction imposed against a party can be enforced against a nonparty.

Yelp argues in the alternative that, even if the injunction against Bird could properly be enforced against a nonparty like Yelp, the evidence in this case does not "support the theory that Yelp was somehow 'aiding and abetting' Bird's violation of the injunction." This issue was a major dispute below. But as we have already discussed, it has no bearing on the question whether the trial court was without power to issue the removal order in the first instance. The authority summarized above establishes that a trial court does have the power to fashion an injunctive decree so that the enjoined party may not nullify it by carrying out the prohibited acts with or through a nonparty to the original proceeding.

### 2. Yelp's First Amendment Rights

Yelp's second due process theory is that the First Amendment protects Yelp's right "to distribute the speech of others without an injunction," and "Yelp simply cannot be denied those rights without notice of the proceedings and an opportunity to be heard." To support this argument, Yelp cites *Marcus v. Search Warrants.* (1961) 367 U.S. 717 (*Marcus*).

In *Marcus*, *supra*, 367 U.S. 717, wholesale distributors of books and magazines alleged that Missouri's procedure for seizing allegedly obscene publications had been applied to them in a manner which violated their due process rights. The evidence in that case showed that a police officer filed complaints stating that each appellant kept "obscene" publications for sale; a circuit judge conducted an ex parte hearing on the complaints; and, without reviewing the allegedly obscene material, the judge issued warrants authorizing any officer in the state to search for and seize obscene materials from appellants' premises. The warrants were subsequently executed by different officers who seized all publications which, in their judgment, were obscene. Thirteen days later, appellants were afforded hearings on their motions to quash the search warrants, suppress evidence, and return their property. More than two months after the

21

materials were seized, the circuit judge issued an opinion finding that 180 of the 280 seized items were not obscene and were to be returned to appellants. (*Id*. at pp. 723-724.)

The United States Supreme Court held that, as applied to the *Marcus* appellants, Missouri's procedure lacked due process safeguards to assure that non-obscene materials were afforded First Amendment protection. (*Marcus*, *supra*, 367 U.S. at p. 731.) "Putting to one side" the fact that appellants were not afforded an opportunity to challenge the complaints filed against them prior to execution of the warrants, the court highlighted several flaws in the Missouri procedure, including that the judge issued a warrant based on cursory allegations of a single officer without actually reviewing any of the allegedly obscene material; the warrants gave officers broad discretion to use individual judgment to determine what material was obscene; the officers were provided with no "guide to the exercise of informed discretion"; and two-thirds of the seized publications which were not obscene were withheld from the market for over two months. (*Id*. at pp. 731-733.) These circumstances demonstrated that Missouri's procedure lacked sufficient safeguards to justify conferring discretion on law enforcement to seize allegedly obscene materials: "Procedures which sweep so broadly and with so little discrimination are obviously deficient in techniques required by the Due Process Clause of the Fourteenth Amendment to prevent erosion of the constitutional guarantees." (*Id*. at p. 733, fn. omitted.)

We disagree that *Marcus*, *supra*, 367 U.S. 717 supports Yelp's due process claim for several reasons. First, Yelp's factual position in this case is unlike that of the *Marcus* appellants, who personally engaged in protected speech activities by selling books, magazines and newspapers. In order to claim a First Amendment stake in this case, Yelp characterizes itself as a publisher or distributor. But, at other times Yelp portrays itself as more akin to an Internet bulletin board—a host to speakers, but in no way a speaker itself. Of course, Yelp may play different roles depending on the context. However, in this context it appears to us that the removal order does not treat Yelp as a publisher of Bird's speech, but rather as the administrator of the forum that Bird utilized to publish her defamatory reviews.

22

Second, even if Yelp's operation of an interactive website is construed as constitutionally protected speech by a distributor, *Marcus* does not support Yelp's broad notion that a distributor of third party speech has an unqualified due process right to notice and a hearing before distribution of that speech can be enjoined. In *Marcus*, the use of an ex parte hearing to secure search warrants was only one of many problems with the Missouri procedure which culminated in the ruling that appellants' due process rights were violated. (*Marcus*, *supra*, 367 U.S. at pp. 731-733.) Indeed, in a subsequent case in which *Marcus* was distinguished, the Supreme Court clarified that "[t]his Court has never held, or even implied, that there is an absolute First or Fourteenth Amendment right to a prior adversary hearing applicable to all cases where allegedly obscene material is seized. [Citations.]" (*Heller v. New York* (1973) 413 U.S. 483, 488.)

Third, and crucially, the due process problems explored in *Marcus*, *supra*, 367 U.S. 717, and its progeny pertain to attempts to suppress speech that is only *suspected* of being unlawful. Here, we address the very different situation in which specific speech has already been found to be defamatory in a judicial proceeding. Yelp does not cite any authority which confers a constitutional right to a prior hearing before a distributor can be ordered to comply with an injunction that precludes re-publication of specific third party speech that has already been adjudged to be unprotected and tortious.

### C. *The Constitutional Bar Against Prior Restraints*

Yelp also contends the trial court was without authority to issue the removal order because it constitutes a prior restraint of speech.

#### 1. Applicable Law

"An order prohibiting a party from making or publishing false statements is a classic type of an unconstitutional prior restraint. [Citation.] 'While [a party may be] held responsible for abusing his right to speak freely in a subsequent tort action, he has the initial right to speak freely without censorship.' [Citation.]" (*Evans v. Evans* (2008) 162 Cal.App.4th 1157, 1167-1168.) However, the constitutional bar against prior restraint of speech "does not apply to an order issued after a trial prohibiting the defendant from repeating specific statements found at trial to be defamatory. . . ." (*Id*. at

23

p. 1168, citing *Balboa Island Village Inn, Inc. v. Lemen* (2007) 40 Cal.4th 1141, 1155-1156, italics omitted (*Balboa Island*).)

In *Balboa Island*, *supra*, 40 Cal.4th 1141, a restaurant owner filed a defamation action against a vocal critic of the restaurant. After a bench trial, the court issued a permanent injunction which enjoined the defendant from engaging in various activities including repeating specifically identified defamatory statements about the plaintiff to third parties. (*Id*. at pp. 1145-1146.) The California Supreme Court held that the injunction was overbroad in some respects, but that "a properly limited injunction prohibiting [the] defendant from repeating to third persons statements about the [restaurant] that were determined at trial to be defamatory would not violate [the] defendant's right to free speech." (*Id*. at p. 1146.)

The *Balboa Island* court began with the foundational premise that freedom of speech is a fundamental right protected against invasion by state action by both the First and Fourteenth Amendments. (*Balboa Island*, *supra*, 40 Cal.4th at p. 1147.) But the court also recognized that this right is not absolute: " '[T]here are categories of communication and certain special utterances to which the majestic protection of the First Amendment does not extend because they "are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." [Citation.] [¶] Libelous speech has been held to constitute one such category, [citation] . . . .' [Citations.]" (*Ibid*.)

Because defamation is not protected by the First Amendment, the *Balboa Island* court concluded, "an injunction issued following a trial that determined that the defendant defamed the plaintiff that does no more than prohibit the defendant from repeating the defamation, is not a prior restraint and does not offend the First Amendment." (*Balboa Island*, 40 Cal.4th at p. 1148.) As the court explained, an injunction that is entered following a determination at trial that the enjoined statements are defamatory does not constitute a prohibited prior restraint of expression because " '[o]nce specific expressional acts are properly determined to be unprotected by the [F]irst [A]mendment,

24

there can be no objection to their subsequent suppression or prosecution.' [Citations.]" (*Id.* at pp. 1155-1156.)

### 2. Analysis

The removal order directed at Yelp states: "Yelp.com is ordered to remove all reviews posted by AVA BIRD under user names 'Birdseye B.' and 'J.D.' attached hereto as Exhibit A and any subsequent comments of these reviewers within 7 business days of the date of the court's order."

Under the authority of *Balboa Island*, *supra*, 40 Cal.4th at pages 1155-1156, the trial court had the power to make the part of this order requiring Yelp to remove the three specific statements that were set forth in the exhibit A attachment to the Bird judgment because the injunction prohibiting Bird from repeating those statements was issued following a determination at trial that those statements are defamatory. However, to the extent the trial court additionally ordered Yelp to remove subsequent comments that Bird or anyone else might post, the removal order is an overbroad prior restraint on speech. (*Ibid.*; see also *Evans*, *supra*, 162 Cal.App.4th at p. 1169 [preliminary injunction prohibiting appellant from publishing any "false and defamatory" statements on the Internet constitutionally invalid because there had been no trial and determination on the merits that any statement by appellant was defamatory].) Therefore, we will remand this matter to the trial court with directions that it modify the removal order consistent with this limitation.

Yelp contends that limiting the scope of the removal order to statements that have already been adjudged as defamatory does not cure the constitutional problem because the findings that Bird's reviews of Hassell were defamatory were not made by a jury. According to Yelp, "the Supreme Court in *Balboa Island* carefully limited its narrow holding to judgments entered *after a jury trial* . . . ." (Original italics.) We find nothing in *Balboa Island* supportive of this contention. In fact, the injunction in that case was issued after a bench trial. (*Balboa Island*, *supra*, 40 Cal.4th at p. 1144.)

Yelp argues that even if *Balboa Island* applies in this context, the removal order is impermissibly overbroad because Hassell failed to actually prove that Bird wrote the

February 2013 review posted under the name "J.D. Alameda, CA," or the April 2013 review posted under the name "Birdseye B. Los Angeles, CA." However, the trial court made a final judicial determination that Bird posted those reviews and, for reasons we have already discussed, Yelp does not have standing to challenge that aspect of the judgment.

### D. *Yelp's Immunity from Tort Liability*

Finally, Yelp contends that the removal order is barred by section 230 of the CDA, 47 United States Code section 230 (section 230). According to Yelp, section 230 prohibits courts "from ordering website providers like Yelp to remove content provided by third parties."

#### 1. Applicable Law

Section 230 states, in pertinent part: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." (§ 230(c)(1).) "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." (§ 230(e)(3).)

Section 230 was enacted as an amendment to the CDA. Originally, the primary objective of the CDA was to restrict the exposure of minors to indecent materials on the Internet. However, through the addition of section 230, the CDA acquired a second objective of furthering First Amendment and e-commerce interests on the Internet. (*Batzel v. Smith* (9th Cir. 2003) 333 F.3d 1018, 1027-1028.)

Accordingly, section 230 has been construed broadly to immunize "providers of interactive computer services against liability arising from content created by third parties." (*Fair Housing Coun., San Fernando v. Roomamates.com* (9th Cir 2008) 521 F.3d 1157, 1162, fn. omitted; see also *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.* (N.D.Cal. 2015) 2015 U.S. Dist. LEXIS 154716.) As elucidated in a leading decision by the Fourth Circuit, section 230 also "precludes courts from entertaining claims that would place a computer service provider in a publisher's role. Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—

26

such as deciding whether to publish, withdraw, postpone or alter content—are barred." (*Zeran v. America Online, Inc.* (4th Cir. 1997) 129 F.3d 327, 330 (*Zeran*).)

The justification for this broad grant of immunity is that it (1) encourages Internet service providers to self-regulate the dissemination of offensive material over their services, and (2) avoids a chilling effect on Internet free speech that would result from exposing companies to tort liability for potentially harmful messages they do not create but that are delivered by using their service. (*Zeran*, *supra*, 129 F.3d at p. 331.)

California courts have also construed section 230 to afford interactive service providers broad immunity from tort liability for third party speech. (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33 (*Barrett*); *Delfino v. Agilent Technologies, Inc*. (2006) 145 Cal.App.4th 790, 802-804 (*Delfino*); *Gentry v. eBay, Inc.* (2002) 99 Cal.App.4th 816, 830; *Kathleen R. v. City of Livermore* (2001) 87 Cal.App.4th 684 (*Kathleen R*.).)

In *Barrett*, *supra*, 40 Cal.4th 33, our state Supreme Court followed *Zeran* and its progeny. Concluding that section 230 confers "broad immunity against defamation liability for those who use the Internet to publish information that originated from another source," the *Barrett* court held that the statute "prohibits 'distributor' liability for Internet publications." (*Barrett*, at pp. 39-40.) The court expressed concern about the "disturbing implications" of the "prospect of blanket immunity for those who intentionally redistribute defamatory statements on the Internet." (*Id*. at p. 63.) However, the court observed that, "[a]t some point, active involvement in the creation of a defamatory Internet posting would expose a defendant to liability as an original source." (*Id*. at p. 60, fn. 19.) Aside from that limitation, the court reasoned that applying section 230 to exempt Internet intermediaries from defamation liability for republication furthers congressional intent and that any expansion of tort liability beyond the originator of the defamatory Internet publication "must await congressional action." (*Id*. at p. 63.)

Thus, "[t]here are three essential elements that a defendant must establish in order to claim section 230 immunity" from California tort liability. (*Delfino*, *supra*, 145 Cal.App.4th at pp. 804.) "They are '(1) the defendant [is] a provider or user of an interactive computer service; (2) the cause of action treat[s] the defendant as a publisher

or speaker of information; and (3) the information at issue [is] provided by another information content provider.' [Citation.]" (*Id.* at p. 805.)

### 2. Analysis

Yelp argues the authority summarized above establishes that the removal order is void. We disagree. The removal order does not violate section 230 because it does not impose any liability on Yelp. In this defamation action, Hassell filed their complaint against Bird, not Yelp; obtained a default judgment against Bird, not Yelp; and was awarded damages and injunctive relief against Bird, not Yelp.

These circumstances distinguish the present case from Yelp's authority, all cases in which causes of action or lawsuits against internet service providers were dismissed pursuant to section 230. (See, e.g., *Barnes v. Yahoo!, Inc.* (9th Cir. 2009) 570 F.3d 1096, 1098 [CDA "protects an internet service provider from suit" for failing to remove material from its Web site that was harmful to the plaintiff]; *Carafano v. Metrosplash.com. Inc*. (9th Cir. 2003) 339 F.3d 1119, 1125 ["despite the serious and utterly deplorable consequences that occurred in this case, we conclude that Congress intended that service providers such as Matchmaker be afforded immunity from suit']; *Goddard v. Google, Inc.* (N.D.Cal. 2009) 640 F.Supp.2d 1193 [dismissing complaint against Internet service provider for allegedly fraudulent advertisement that appeared on its Web site]; *Doe II v. MySpace Inc*. (2009) 175 Cal.App.4th 561 [sustaining demurrer to causes of action for negligence and strict liability against social networking Web site arising out of sexual assaults inflicted on minors who met their assailants on the site]; *Hupp v. Freedom Communications, Inc*. (2013) 221 Cal.App.4th 398 [affirming order granting anti-SLAPP motion to strike claim that the defendant breached its Internet Web site user agreement]; *Delfino*, *supra*, 145 Cal.App.4th 790 [affirming summary judgment in favor of employer that provided interactive computer service to employee who used the system to make threats over the Internet].)

Neither party cites any authority that applies section 230 to restrict a court from directing an Internet service provider to comply with a judgment which enjoins the originator of defamatory statements posted on the service provider's Web site. We note,

however, that section 230 explicitly provides that "[n]othing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section." (§ 230(e)(3).) As discussed above, California law authorizes a trial court to issue an injunction preventing the repetition of statements that have been adjudged to be defamatory by the trier of fact. (*Balboa Island*, *supra*, 40 Cal.4th at p. 1160.) California law also empowers the court to enforce its judgment by ordering that an injunction run to a non-party through whom the enjoined party may act. (*Planned Parenthood*, *supra*, 107 Cal.App.4th at pp. 352-353.) It appears to us that these state law procedures are not inconsistent with section 230 because they do not impose any liability on Yelp, either as a speaker or a publisher of third party speech.

Yelp mistakenly contends that the "trial court" imposed liability on Yelp as an aider and abettor of Bird's defamatory postings. The "trial court" that conducted the default prove-up hearing and entered judgment against Bird alone (Judge Sullivan) did not find that Yelp was an aider and abettor or impose any liability on Yelp whatsoever. Furthermore, although the trial court that conducted the hearing on Yelp's motion to vacate (Judge Goldsmith) found that Yelp was an aider and abettor, we have already declared this finding not relevant to the issues before this court, and reiterate that it has no bearing on our analysis.

Yelp also argues that "enjoining a party from publishing content is a remedy that can only follow from a finding of liability, and thus the injunction entered against Yelp cannot survive the robust protection of the CDA." Again though, the party that was enjoined from publishing content in this case was Bird, and that injunction did follow a finding of Bird's liability for publishing defamatory reviews about Hassell. Assuming, as Yelp has maintained, that Yelp played no role in the creation of that defamatory speech, an order directing Yelp to remove only those reviews that are covered by the injunction does not impose any liability on Yelp.

Yelp insists that "Section 230 immunity encompasses claims for injunctive relief, and the cases do not distinguish between defendants and non-parties." However, each case cited for this proposition involved a failed claim for injunctive relief that was alleged

29

against an Internet service provider defendant in a civil lawsuit. (*Kathleen R.*, *supra*, 87 Cal.App.4th 684; *Noah v. AOL Time Warner, Inc.* (E.D.Va. 2003) 261 F.Supp.2d 532; *Smith v. Intercosmos Media Group* (E.D.La. 2002) 2002 U.S. Dist. LEXIS 24251; see also *Medytox Solutions, Inc. v. Investorshub.com, Inc.* (Fla. 2014) 152 So.3d 727.)

Yelp argues that cases extending CDA immunity to claims for injunctive relief that are alleged directly against a interactive service provider in a tort action must apply with equal force to an injunction that binds a non-party. Otherwise, Yelp argues, "a plaintiff who wants to enjoin an interactive computer service can nullify its immunity under the CDA by suing the creator of the third-party content and then obtaining an injunction binding the interactive computer service . . . ." This argument ignores the fact that protection against third party liability is the foundation of CDA immunity. As we have pointed out, Hassell did not allege any cause of action seeking to hold Yelp liable for Bird's tort. The removal order simply sought to control the perpetuation of judicially declared defamatory statements. For this reason, Yelp seriously understates the significance of the fact that Hassell obtained a judgment which establishes that three reviews Bird posted on Yelp.com are defamatory as a matter of law, and which includes an injunction enjoining Bird from repeating those three reviews on Yelp.com. Indeed, that injunction is a key distinction between this case and the CDA cases that Yelp has cited, all of which involved *allegations* of defamatory conduct by a third party, and not a judicial determination that defamatory statements had, in fact, been made by such third party on the Internet service provider's Web site.

Finally, Yelp contends that section 230 bars "any liability for failing to comply with the injunction." Once again, Yelp's imprecision masks the real question. If an injunction is itself a form of liability, that liability was imposed on Bird, not Yelp. Violating the injunction or the removal order associated with it could potentially trigger a different type of liability which implicates the contempt power of the court. Generally speaking, "a nonparty to an injunction is subject to the contempt power of the court when, with knowledge of the injunction, the nonparty violates its terms with or for those who are restrained." (*People v. Conrad*, *supra,* 55 Cal.App.4th at p. 903, italics omitted.)

30

Yelp does not cite any authority which addresses the question whether section 230 would immunize Yelp from being sanctioned for contempt. In our opinion, sanctioning Yelp for violating a court order would not implicate section 230 at all; it would not impose liability on Yelp as a publisher or distributor of third party content. A "contempt proceeding is not a civil action but is of a criminal nature even though its purpose is to impose punishment for violation of an order made in a civil action. [Citation.]" (*Freeman v. Superior Court* (1955) 44 Cal.2d 533, 536.) The cases we have found in which Internet service providers were named in contempt proceedings are consistent with this conclusion. (See, e.g., *Blockowicz v. Williams* (7th Cir. 2010) 630 F.3d 563; *Arista Records, LLC v. Vita Tkach* (S.D.N.Y. 2015) 2015 U.S. Dist. LEXIS 107339.)

For all of these reasons, Yelp has failed to establish that section 230 or any other law barred the trial court from issuing the removal order under the circumstances of this case. Therefore, Yelp's nonstatutory motion to vacate the Bird judgment was properly denied.

## IV.
## DISPOSITION

The September 2014 order denying Yelp's motion to vacate the Bird judgment is affirmed, but this case is remanded to the trial court with the direction to narrow the terms of the removal order in the January 2014 judgment by limiting it to the specific defamatory statements that were listed on exhibit A of that judgment. The parties are to bear their own costs of appeal.

31

_____
RUVOLO, P. J.


We concur:


_____
RIVERA, J.


_____
STREETER, J.

A143233, *Hassell v. Bird*

| | |
|---|---|
| Trial Court: | San Francisco Superior Court |
| Trial Judge: | Hon. Donald J. Sullivan |
| Counsel for Appellant: | David Wright Tremaine, Thomas R. Burke and Deborah A. Adler |
| Counsel for Respondents: | Duckworth Peters Lebowitz Olivier, Monique Olivier |

A143233, *Hassell v. Bird*